## JESSE HINCKLEY *versus* ROWLAND H. BRIDGHAM.

A., as creditor of B., requested the latter to secure him, to which he replied that "he owned a vessel, and was willing to transfer the same as security" to A. The vessel was of much greater value than the demand. B. shortly thereafter transferred the vessel by an absolute bill of sale, which was recorded at the Custom House, all of which was done without the knowledge of A. till sometime afterwards : —

*Held*, that the transaction, to have been consistent with the previous conversation, should have been in the form of a mortgage, and that there was not such a perfected sale of the vessel as was valid against subsequent attaching creditors.

The plaintiff, as an officer, having three writs against A. attached a vessel as the property of A., for which the defendant became receipter. Judgment and execution followed in one of the actions, and, on the refusal of the defendant to re-deliver the vessel, an action was instituted on his receipt. Pending the suit, judgments and executions were had in the other suits against A. : —

*It was held*, that no new demand on the defendant was required; and that the plaintiff was entitled to the amount of the three judgments against A. as damages, that amount being less than the value of the vessel.

ON REPORT.

The facts in this case are fully stated in the opinion of the Court.

*B. W. Hinkley*, for plaintiff.

1. A *delivery* of a vessel in port, at the time of sale, is as necessary to perfect the title, as it is when any other description of property is sold. *Richardson* v. *Kimball*, 28 Maine, 463; *Brinly* v. *Spring*, 7 Greenl., 241; *Ludwig* v. *Fuller*, 17 Maine, 162.

2. An absolute conveyance of personal property cannot be legally proved in a court of common law to have been made only to secure the purchaser for liabilities assumed, and be good against the creditors of the vendor. *Richardson* v. *Kimball*, 28 Maine, 463; *Gorham* v. *Herrick*, 2 Greenl., 87; *Coburn* v. *Pickering*, 3 N. H., 415; *Whitaker* v. *Sumner*, 20 Pick., 399.

3. A debtor, without the knowledge of his creditor, exe-

cuted, and caused to be recorded, a mortgage of personal property, to secure a debt, and appointed a third person to act in the mortgagee's behalf. The debtor's property was soon after assigned under the statute of 1838. After the assignment, he delivered the mortgage to the creditor:—Held, that the mortgaged property passed to the assignees. *Dole* v. *Bodman*, 3 Met. 139.

4. If held as security, it should have been recorded in the office of the town clerk of Castine. R. S., c. 91, § § 1 and 5, p. 569; *Greeley* v. *Waterhouse*, 19 Maine, 9.

*Abbott*, for the defendant, cited *Sawyer* v. *Mason*, 19 Maine, 49; *Moulton* v. *Chapin*, 28 Maine, 505; *Norris* v. *Bridgham*, 14 Maine, 429; *Bicknell* v. *Hill*, 33 Maine, 297; *Pearson* v. *Tinker*, 36 Maine, 385; *Gilmore* v. *McNeil*, 45 Maine, 599; 2 Parsons on Cont., 157, 168; *Fisher* v. *Bartlett*, 8 Greenl., 122; *Lathrop* v. *Cook*, 14 Maine, 414; 1 Greenl. Ev., § 498; *Kent* v. *Weld*, 11 Maine, 459; 7 Greenl., 181; *Vose* v. *Manly*, 19 Maine, 331; *Thayer* v. *Stark*, 6 Cush., 11; 2 Greenl. Ev., § 640; *Goodenow* v. *Dunn*, 21 Maine, 92; *Sawyer* v. *Pennell*, 19 Maine, 167; *Brooks* v. *Briggs*, 32 Maine, 447; *Forbes* v. *Parker*, 16 Pick. 462; 9 U. S. Laws, 440, c. 27; *Eastman* v. *Avery*, 23 Maine, 248.

The opinion of the Court was drawn up by

CUTTING, J.—It appears that the plaintiff, on March 19, 1856, then being a deputy sheriff, on three several writs against Joseph H. and B. F. Stearns in favor of J. N. Dennison & Co., Pierce, Clark & Co. and Pierce, Brothers & Flanders, attached, as the property of the defendants in those suits, the schooner Diana, her tackle, apparel and furniture, and on the same day delivered the same to the defendant, upon his written "promise safely to keep said property and re-deliver the same on demand to said Hinckley or whoever may be authorized to receive the same, it being valued at thirteen hundred and fifty dollars." That subsequently, on May 8, 1857, J. N. Dennison & Co. recovered judgment and

execution against Joseph H. Stearns for $301,29 debt and costs taxed at $13,42, which execution was seasonably placed in the hands of one *J. P. Thomas,* a deputy sheriff and successor of the plaintiff in that office, who testified that— "By direction of the plaintiff's attorney, I made a demand on Jesse Hinckley for the schooner Diana, as having been attached on the original writ served by him, and he gave me a receipt of Rowland H. Bridgham for said vessel as attached on the original writ, and told me to call on said Bridgham for said vessel. Afterwards, on the third day of June, I presented said receipt to said Bridgham, and requested him to deliver me the vessel for the purpose of being seized on said execution. He said he could not do it, for they had gone away with the vessel, and he said 'I don't consider myself bound by the receipt, as Stearns did not own the vessel.' "

It further appears that the writ in this case was issued on October 9, 1857, founded on the defendant's contract and alleging a breach of the same by a refusal to deliver the vessel to *Thomas* when demanded by him.

To this suit, as thus far disclosed, the defendant sets up no defence, except that shadowed forth in his reply to the officer, "I don't consider myself bound by the receipt as Stearns did not own the vessel." And in support of that declaration introduces in evidence a bill of sale of the schooner in due form from *Joseph H. Stearns* to one *Rowland A. Bridgham* of March 11, 1856, consideration eight hundred dollars. Indorsed thereon under date of March 12, 1856,—"Received at Custom House, Castine. Recorded, Book of Enrolments, Vol. 4, Page 111, By G. S. Vose, Dy. Coll."

It would seem that this transfer, being anterior to the attachment, if made in good faith and not in violation of any known principle of law, and was duly enrolled, would constitute a valid defence. But all of these prerequisite propositions are denied by the plaintiff's counsel, and that is the first issue presented to us, who, by agreement of the parties, are to exercise in our findings the functions both of a Court and jury.

Hinckley *v.* Bridgham.

And, *first*, a question is made as to the legality of the enrolment, and evidence has been produced, which, if admissible, might raise some doubts as to the truth of the deputy collector's certificate. We are inclined, however, to the opinion that the certificate must be conclusive; but, inasmuch as the defendant had the care, custody and control of the custom house records, and the entry was made in his favor, and since the case will not turn on that point, we forbear a more decisive expression.

*Secondly*, it is contended that the sale was made under such circumstances as to be void in law, because it was *ex parte*, without adequate consideration, without delivery of the property, and absolute when intended only as security.

It is not controverted that *Rowland A. Bridgham*, the vendee, is the son of the defendant, and had been a clerk in the store of *Joseph H. Stearns*, the vendor. The following is the substance of the evidence in relation to the sale, as detailed by the vendee himself, who testified — " I was formerly in the employ of *Joseph H. Stearns*, something over three years, cannot state exactly, at an agreed price for the first year of two hundred and fifty dollars, for subsequent years no price was named. I claimed three hundred dollars for the second, and four hundred and fifty dollars for the third year; never had a final settlement. Stearns was willing, subsequently, to allow those wages. He had an account against me of three hundred and fifty-odd dollars. Prior to March 11, 1856, I made an attempt to obtain of Stearns security for my claim. I think I was advised, prior to that time, to obtain security from him. I think I left for Boston the morning before March 11, 1856, or the same morning. Shortly before leaving, I had a conversation with Stearns about securing my claim; his reply to me was, ' *I own the schooner Diana free and clear, and will give her to you to secure your claim, if you are afraid.*' Immediately on my return from Boston, which I think was in April, I first knew the bill of sale was made and lodged in the custom house. I have managed the schooner since."

Other testimony was introduced tending to show that the

charge for services was not unreasonable. Also as to the value of the vessel, the lowest estimate being $850, and the highest $1500, the latter supported by the declaration of the defendant.

Now, upon the foregoing evidence, the question arises whether there was a sale so perfected as to be valid against subsequent attaching creditors, who are authorized minutely to scrutinize the whole transaction, and detect and expose, if possible, any actual or constructive fraud, or any imperfections which may legally invalidate the sale, which right they now claim to exercise.

At the time of the departure of the vendee for Boston, on or before the morning of the eleventh of March, eight days before the attachment, we find to be due to him from the vendor a balance of only $650 for services, a request of the vendee to be secured, and the vendor's reply that he was the owner of the vessel and was willing to transfer the same as security, "if you (the vendee) are afraid." Upon this foundation *solely* rests the theory of the defendant that the bill of sale was subsequently made on that day, with the knowledge and approbation of the vendee, which, by its enrolment, constituted a legal delivery and acceptance, and consequently a valid sale. This theory is unsupported by some of the essential elements which constitute a contract, both in law and fact. A conversation about security is not an agreement to secure. The record of enrolment can only be *prima facie* evidence of a delivery, which is rebutted by the positive testimony of the vendee himself, that he did not know of the transaction until his return from Boston in the April following. The absolute sale was unnatural and inconsistent with the previous conversation. To have been consistent, it should have been a mortgage, to be void upon condition of payment, in which event the creditors of the vendor would have had an attachable interest of considerable amount. And, finally, the consideration named greatly exceeds the amount due. But, instead of a mortgage for security, the sale was absolute, which brings this case, in some particulars, within that of *Richardson* v.

*Kimball,* 28 Maine, 463, where SHEPLEY, C. J., remarks, —
" The bills of sale purport to convey those shares of the vessels absolutely and not as security for liabilities assumed. There is no satisfactory proof of any payment made, *or the discharge of any claim.* An absolute conveyance of personal property cannot legally be proved, in a court of common law, to have been made only to secure the purchaser for liabilities assumed, and be good against the creditors of the vendor," citing *Gorham* v. *Herrick,* 2 Maine, 87; *Coburn* v. *Pickering,* 3 N. H., 415; *Whitaker* v. *Sumner,* 20 Pick., 399.

We are aware it has been settled, in this State, that a bill of sale under some of the circumstances disclosed in this case, although to be regarded " as strong evidence of fraudulent intention in the parties to it, yet that it was not conclusive," and that the true intention was a question of fact to be settled by the jury. See *Reed* v. *Jewett,* 5 Maine, 96. And that this doctrine has been sustained by subsequent decisions, although, perhaps, somewhat conflicting. But, in the present case, if it became necessary for us to settle a question of fact as to the real intent, we perceive no sufficient evidence to remove the legal inference; certainly not as to the vendor, and the vendee could have had no intention until he had knowledge of the sale, which we have seen was after the attachment.

In our opinion, therefore, the defence fails, and, according to the agreement of the parties, *a default is to be entered.*

But another question is presented, which more properly relates to the amount of damages the plaintiff may be entitled to recover. Heretofore we have referred only to the demand made by *Thomas,* on June 3, 1857, who then had the receipt and the execution recovered by the first attaching creditors in his possession, for the amount of which we have already decided the defendant is liable.

It appears further, that subsequently, on Nov. 18, 1857, *Pierce, Clark & Co.,* recovered judgment for $411,24 debt, and $13,72, costs, and *Pierce, Brothers & Co.,* for $149,68, debt, and $13,72, costs, on which executions issued and were

Hinckley *v.* Bridgham.

placed in the hands of one *Augustus Stevens*, another deputy sheriff, as early as Dec. 10, 1857, for collection, who states that on that day he demanded the vessel of the defendant. A question is made as to the validity of this demand. In our opinion it was inoperative. It was after suit brought, and, besides, it does not appear affirmatively that the officer had the receipt in his possession. *Gilmore* v. *McNeil*, 45 Maine, 599. But a subsequent demand was not necessary. On the defendant's refusal to surrender the vessel on the first request, his liability was fixed, and he became responsible by force of his contract. *Thomas*, if he had obtained possession of the vessel on his demand, in the regular discharge of his official duty, must have sold the property at public auction, and, after satisfying the execution in his hands, kept the balance of " the proceeds to be applied to the discharge of the several judgments in the order in which the writs of attachment were served." R. S. c. 84, § 21. The value of the vessel being, in our opinion, sufficient to satisfy all three executions, judgment must be rendered against the defendant, and damages assessed accordingly.

TENNEY, C. J., and APPLETON, MAY, and DAVIS J. J. concurred.

KENT, J., having been of counsel in the case, did not sit.