## McMicken *et al. versus* The Commonwealth.

1. In an action on a sheriff's recognisance under the Act of March 28th 1803, the judgment is not for the penalty but for the damage sustained by the party suing. Each party aggrieved is to institute his own action in the name of the Commonwealth for his use.

2. The Act of 1803 as regards suits on sheriffs' recognisances, was not altered by the Act of 1836 relating to official bonds.

3. In a suit on a sheriff's recognisance the verdict was for the Commonwealth for the penalty, and for the party grieved for his damages. The verdict for the Commonwealth should have been set aside, and judgment entered below for the party grieved; and on failure to do so the Supreme Court will enter such judgment.

4. In a suit against a sheriff and his sureties a general *appearance* was entered for the defendants, but no *plea* was put in for the sheriff. When the case came on for trial, on motion of plaintiffs, judgment was entered against the sheriff for want of an appearance, in the presence of the counsel who had appeared, they not objecting: *held*, it was too late to object on error.

5. The judgment was entered against the sheriff for the amount due the suggesting plaintiffs. The regular practice would have been to enter an interlocutory judgment, and the jury to have assessed the damages against him and the other defendants; but the irregularity was not fatal.

[McMicken *v.* Commonwealth.]

6. The judgment against the sheriff was conclusive on his sureties, and dispensed with any evidence of request before suit, which is necessary by the condition of the recognisance.

7. Not averring a request in the scire facias and declaration is a defect cured by the verdict.

8. The court will presume that everything was done at the trial which was necessary to support the action unless the contrary appear on the record.

9. Evidence that the sureties did not acknowledge the recognisance is inadmissible.

10. Brownfield *v.* Commonwealth, 13 S. & R. 265, criticised.

11. A sheriff's recognisance is a record.

12. The plea of *non est factum* is inapplicable to a sheriff's recognisance.

13. It is proper the recognisance should be signed to identify the cognisors, but it is not essential.

14. A sheriff's recognisance cannot be impeached or contradicted by parol evidence other than that which is available against judgments and decrees of courts of record, such as fraud or false personation.

15. An officer intrusted by law with the performance of a public duty of which a record has been made cannot impeach it.

March 27th and 28th 1868.   Before STRONG, READ, AGNEW and SHARSWOOD, JJ.   THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county* : To January Term 1868.   No. 352.

This was a scire facias on a sheriff's recognisance, issued February 26th 1866, by the Commonwealth of Pennsylvania, for the use of William Rawle and George Cadwalader, who survived Benjamin Chew, against John B. McMicken, V. S. Doebler and others.

The writ recited that John B. McMicken, V. S. Doebler and others (naming them), on the 18th of November 1862, came before Theodore Hill, recorder of deeds of Lycoming county, and acknowledged to owe the Commonwealth " $10,000," to be levied and made of their several goods, &c., conditioned for the faithful performance by McMicken of his duties as sheriff, &c., assigning as breach that he had not paid to suitors interested in writs committed to him the sums of money which had come into his hands, and had not paid to Rawle and Cadwalader $4000 which he had received on an execution upon a judgment which they had recovered against Jacob S. Young and others ; and commanding the defendants to appear and show cause "why the said sum of $10,000, &c., should not be levied and made of their goods, &c., according to the force and effect of the said recognisance," &c.   There is no averment in the scire facias that Rawle and Cadwalader had demanded payment from the sheriff.   A declaration was filed March 1st 1866, setting out that the defendants were summoned to answer the Commonwealth to the use of Rawle and Cadwalader, &c., that they render to the Commonwealth $10,000 for the use aforesaid ; that the defendants entered into the recognisance as above stated, which was approved by the judges of the Court of Common Pleas, duly recorded by the recorder of deeds in Lycoming county, and "entered by the

prothonotary in the docket of said county," and averring that McMicken received $4000 for Rawle and Cadwalader as before mentioned, and did not pay the same over, "*but on the contrary, although often requested, the said John B. McMicken, sheriff, the said sum of $4000 to the said Commonwealth for the use aforesaid, or to any person for them, the said Rawle and Cadwalader, has not yet paid—but the same to pay has hitherto neglected and refused, &c., to the damage of the plaintiffs $10,000, &c.*"

"April 16th 1866, Gamble and Hepburn, Cummins and Watson appear for defendants, reserving all exceptions." August 20th 1866, a rule to plead by the first day of next term was entered. On the 20th of November all the defendants but McMicken pleaded severally, "non est factum, performance, payment with leave, &c."

On the 27th of November 1867, on motion of the plaintiff's attorney, the court directed judgment to be entered against McMicken for default of appearance in favor of the Commonwealth for $10,000, and in favor of Rawle and Cadwalader for $4492. A jury on the same day was sworn and the trial proceeded in before Jordan, P. J., against the other defendants.

The plaintiffs gave in evidence the recognisance in the usual form, taken and acknowledged November 18th. 1862, before Theodore Hill, recorder, approved the same day by the judges, and recorded November 19th. Also a certified copy of the recognisance from the office of the secretary of the Commonwealth, of the approval of the governor, November 26th 1862, and commission of same date to John B. McMicken, as sheriff of Lycoming county.

They offered in evidence the scire facias on the recognisance: also the record of judgment, Rawle and Cadwalader v. Jacob S. Young and others, entered April 24th 1865, for $6566.33; fi. fa., issued September 30th 1865; return, November 9th 1865, "received $4000 on this writ, John B. McMicken, sheriff." Both of these offers were objected to but admitted. Several bills of exceptions sealed.

The plaintiffs then closed.

The defendant offered to prove, by Theodore Hill, that the defendants never acknowledged or entered into the recognisance, and that he was at the time the recorder before whom the recognisance purported to have been acknowledged and taken.

The offer was objected to by the plaintiffs, rejected by the court and a bill of exceptions sealed.

The defendants asked the court to charge:—

"That there is no evidence that the plaintiffs requested John B. McMicken to pay to them the money collected by him on their execution before this suit was brought, and that there has therefore been no breach of the condition of the recognisance proved,

[McMicken *v.* Commonwealth.]

and that on all the evidence their verdict should be in favor of the defendants."

The court instructed the jury that "the plaintiffs are entitled to recover $4000, with interest from the 9th of November 1865. The court are of opinion that an actual demand on the sheriff before suit brought was not necessary, and that the fact of the sheriff having returned the fi. fa., and that he received $4000 on the execution, put the proof that he paid it to plaintiffs on the defendants. The verdict to be rendered: 'We find in favor of the Commonwealth the sum of $10,000, and in favor of the plaintiffs, William Rawle and George Cadwalader, the sum of $4492.' "

In the issue against the defendants other than McMicken, the jury, November 27th 1867, found "in favor of the Commonwealth the sum of $10,000, and in favor of the plaintiffs, William Rawle and George Cadwalader, the sum of $4492."

The defendants, including McMicken, took out a writ of error, and assigned for error :—

That the court erred,

1. In entering judgment against McMicken by default for want of an appearance on the 27th of November 1867, an appearance having been duly entered for him on the 16th of April 1866, as appears by the record.

2. In entering judgment for the sum of $10,000 in favor of the Commonwealth, and in the sum of $4492 and costs in favor of Rawle and Cadwalader.

3. The scire facias is erroneous in that the defendants are required to show cause why the sum of $10,000 acknowledged by them, &c., should not be levied and made of their goods and chattels, &c., and not why the sum of $4000, the amount alleged to have been received by the sheriff, on the execution of Rawle and Cadwalader, should be levied, &c., as they should have been required in the said writ.

4. The writ of scire facias is erroneous in that it is not averred that the said sum of $4000, alleged to have been received by the sheriff, on the execution of Rawle and Cadwalader, was demanded by them from the sheriff, or that he was ever requested to pay the same to them before the suit brought.

5. The declaration is erroneous in that it is not therein averred that Rawle and Cadwalader, or any person for them, requested the sheriff to pay them the sum of $4000 alleged to have been received by the sheriff, on their execution against Jacob S. Young, &c.[1]

6. The declaration is erroneous in that it is not therein alleged, that the sheriff did not pay the $4000 to Rawle and Cadwalader.[1]

[1] *Quere?* See narr., *supra.*—REPORTER.

[McMicken v. Commonwealth.]

7. Rejecting the defendant's offer of evidence.

8. In not answering and affirming defendant's point.

9. In charging, "That the plaintiffs are entitled to recover $4000 with interest from the 9th of November 1865."

10. In charging: "That an actual demand on the sheriff, before suit brought, was not necessary, and that the fact of the sheriff having returned the fi. fa., and that he received $4000 on the execution, put the proof that he paid it to the plaintiff on the defendants."

11. In charging: "The verdict to be rendered, 'we find in favor of the Commonwealth the sum of $10,000, and in favor of the plaintiffs, Rawle and Cadwalader, for the sum of $4492.'"

*H. W. Watson* and *J. W. Comley* (with whom was *H. H. Cummins*), for plaintiffs in error, cited,

As to 2d assignment: Act of March 28th 1803, § 4, 4 Sm. L. 48; Purd. 895, pl. 14; June 14th 1836, § 6, Pamph. L. 638, Purd. 113, pl. 14; Wolverton v. Commonwealth, 7 S. & R. 273; Co. Litt. 172 a; 2 Bl. Com. 340; Britt. c. 28; Ingram v. Ingram, Winch. Ent. 282; People v. Wiley, 3 Hill 212; U. States v. Linn, 15 Pet. 311; Carmack v. Commonwealth, 5 Binn. 192; 2 Park & Johns. 721.

As to 3d assignment: Act of March 28th 1803, *supra*.

As to 4th, 5th, 6th, 8th, 9th and 10th assignments: 1 Chitty's Pl. 322–324; Lower's Pl. 232, 237; Withrow v. Commonwealth, 10 S. & R. 231; Weigley v. Wier, 7 Id. 309; Jefferies v. Sheppard, 3 B. & Ald. 696; Simpson v. Routh, 2 Barn. & Cress. 681; Birks v. Trippet, 1 Saund. 32; Selman v. King, Cro. Jac. 183; Hill v. Wade, Id. 523; Waters v. Bridges, Id. 639.

As to 7th assignment: Brownfield v. Commonwealth, 13 S. & R. 265.

*W. H. Armstrong* (with whom were *Bentley & Eutermarks*), for defendants in error, cited,

As to the 1st assignment, to show that as to the sureties it was immaterial: Brownfield v. Commonwealth, *supra;* Bailey v. Clayton, 8 Harris 295; Medford v. Dorsey, 2 W. C. C. R. 433; King v. Cartee, 1 Barr 153; Commonwealth v. Lelar, 1 Harris 29; Chahoon v. Hollenback, 16 S. & R. 432; Dohner's Assignees, 1 Barr 101.

As to 2d assignment: Act of April 15th 1834, § 62, 63 Pamph. L. 547, Purd. 893, pl. 1, 2; Commonwealth v. Lelar, Wolverton v. Commonwealth, Act of June 24th 1836, § 6, *supra*. For form of action: Commonwealth v. Montgomery, 7 Casey 519; Bailey v. Commonwealth, 5 Wright 473; Keagy v. Commonwealth, 7 Id. 70; Commonwealth v. Contner, 9 Harris 267; Commonwealth v. Duncan, 8 Barr 93; Morris's Estate, 4 Id. 162; Withrow v. Commonwealth, *supra*.

[McMicken *v.* Commonwealth.]

As to 4th, 5th, 6th, 8th, 9th and 10th assignments: Act of June 16th 1836, § 41, Pamph. L. 768, Purd. 437, pl. 42; Wartman *v.* Conyngham, Pet. C. C. R. 243; Zantzinger *v.* Old, 2 Dall. 265; Williams' Appeal, 9 Barr 267.

As to the 7th assignment: 3 Bl. Com. Ch. 21; Brownfield *v.* Commonwealth, *supra.*

The opinion of the Court was delivered, April 2d 1868, by

SHARSWOOD, J.—The Act of March 28th 1803, 4 Sm. L. 45, entitled "An Act directing sheriffs and coroners to give sufficient sureties for the faithful execution of their official duties and for other purposes," after directing that the sheriffs and coroners of the several counties shall give recognisances and bonds in the form prescribed in the act, provides, sect. 4, that actions of debt or of scire facias may be instituted by the individuals aggrieved upon such recognisance, "and if upon such suit it shall be proved what damage hath been sustained, and a verdict and judgment shall be thereupon given, execution shall issue for so much only as shall be found by the said verdict and judgment with costs, which suits may be instituted, and the like proceedings be thereupon had, as often as damage shall be so as aforesaid sustained." Under this act it was held in Wolverton *et al. v.* The Commonwealth, 7 S. & R. 273, that in a suit upon the recognisance, the judgment is not to be entered for the penalty for the use of those interested, but for the damage sustained by the party suing. Nothing can be clearer than that each party aggrieved is to institute his own action in the name of the Commonwealth for his use: Per Duncan, J., in Campbell *et al. v.* The Commonwealth, 8 S. & R. 417. The express provision of the act, that suits may be instituted as often as damages shall be sustained, conclusively shows this. Nor does this seem to have been questioned by the court below, but they consider that in this respect the law was altered by the Act of June 14th 1836, Pamph. L. 638. This act is entitled "An Act relative to bonds with penalties, and official bonds," and the 6th section provides that "every bond and obligation which shall be given to the Commonwealth by any public officer," may be sued and prosecuted in the manner therein prescribed, by which one suit and one judgment only can be entered, and the interests of all persons aggrieved may be from time to time suggested on the record, and proceeding had by writs of scire facias on such judgments to ascertain the amounts, which each may be entitled to recover. So much of the Act of 1803 as relates to proceedings upon the official bond of the sheriff is no doubt supplied and therefore repealed by this act. It is supposed, however, that the words "every bond and obligation" include also the recognisance, which is defined to be "an obligation of record:" 2 Blackst. Com. 341; Williamson *v.* Mitchell, 1 Penna. R. 11. It seems clear, however, that the

Act of 1836 was intended only to regulate actions upon official bonds, strictly so called. Although the Act of April 15th 1834, entitled "An Act relating to counties and townships and county and township officers," Pamph. L. 537, uses only the word "bond," yet throughout the Act of 1803, the word "obligation" is used in contradistinction to recognisance. In every other part of the Act of 1836, the terms employed are "bond or obligation," except in the eleventh and thirteenth paragraphs, in which the words are "such bond" and "any bond as aforesaid." If we are to consider the word obligation in this act to mean recognisance, then the system of remedies which it introduces is a very incomplete and inadequate one, for the provisions made in the paragraphs xi., xii., xiii., are certainly confined to bonds. Indeed, without the eleventh paragraph, the recognisance would be a useless and nugatory security, for after a judgment on the recognisance for the penalty, how are the parties aggrieved to obtain any redress if they cannot proceed by scire facias on such judgment? It is worthy of remark that the commissioners to revise the civil code say not a word in their remarks accompanying this bill, 2 Parke & Johns. Dig. 721, on the subject of recognisances; and it may be considered now as an established canon of construction, that in the revised statutes mere general words shall not be held to change the law, unless such clearly appears to have been the intention: Chambers v. Carson, 2 Whart. 9; In re Bacon, 21 Wend. 316; Commonwealth v. Rainey, 4 W. & S. 186. "We must remember," say the court in the last cited case, "that these revised statutes, which made extensive changes in the arrangement of the laws, necessarily left much to be adjusted by the courts; and we are consequently bound to preserve every provision which has not been expressly or necessarily repealed." The learned editor (Judge Stroud), of the fifth edition of Purdon's Digest, published in 1837, retained the 4th and 8th sections of the act of 1803, with this remark prefixed: "All the sections of this act except the following, have been supplied by the revised act:" Stroud's Purdon, 1069, 7th ed. And these sections have been included in the subsequent editions of this work, and also by Mr. Dunlop: Dunlop's Laws 214. We are of the opinion then that the Act of 1803, so far as relates to proceedings upon the recognisance of the sheriff, is not supplied or repealed by the Act of 1836, and that consequently the judgment entered in the court below for the penalty is erroneous.

But the error is not fatal to the proceedings. There was a proper suggestion in the scire facias of the cause of action, and damages sustained by the individuals aggrieved, for whose use the suit had been instituted, a verdict was found in their favor, and judgment entered thereon. The court below could and ought to have set aside the verdict for the penalty, and entered the judgment for

[McMicken *v.* Commonwealth.]

the amount found in favor of the individual plaintiffs alone. What the court below ought to have done, it is entirely competent for this court now to do. We are bound indeed on a writ of error, where the materials for so doing are to be found on the record, to enter such a judgment as the court below ought to have rendered: Stephens *v.* Cowan, 6 Watts 513; Mosher *v.* Small, 5 Barr 224. A judgment may sometimes be reversed in part, and affirmed in part; as where it is good for the debt but bad for the costs: Swearingen *v.* Pendleton, 4 S. & R. 396; Boaz *v.* Heister, 6 S. & R. 18. *A fortiori*, when there are two separate judgments as in this case, one for the penalty, which is erroneous, and the other for the damages, which is regular, the former can be reversed, and the latter affirmed. Therefore, when in an action on a sheriff's official bond, given before the passage of the Act of 1836, the Court of Common Pleas had rendered a general judgment for the penalty according to the provisions of that act, the Supreme Court on error reversed the judgment, and entered judgment according to the Act of 1803, that is for the damages assessed by the jury: Myers *v.* The Commonwealth, 2 W. & S. 60. The error in the scire facias by which the defendants were required to show cause why the penalty of the recognisance should not be levied and made of their goods and chattels, if indeed it was an error, which may be doubted, as it follows the words of the recognisance, was amendable in the court below, and, if necessary, might be amended also here. These remarks dispose of the second, third, ninth and eleventh assignments of error.

The first error assigned is as to the judgment against McMicken, the sheriff, which was entered for want of appearance, whereas it appears by the docket entries that a general appearance had been entered for all the defendants. But the record distinctly exhibits the fact, that this judgment was entered at the trial in the presence of the attorneys, who, as it is now alleged, had appeared; and without any objection or exception by them. They must be held to have assented to the fact that their appearance, though in form general, was not meant to be for McMicken, and they cannot now be permitted to allege that they had appeared for him. When, at the trial of a cause, a proposal was made by the judge, in the presence of the counsel on both sides, who made no objection, that the jury should assess the damages contingently, with leave to the plaintiff to move to enter a verdict for the amount found by the jury, it was held that both parties were bound by the proposal, and that the plaintiff's counsel was not, therefore, at liberty to move for a new trial on the grounds of misdirection; for *qui tacet consentire videtur*, the silence of counsel implied their assent to the course adopted by the judge, and "a man who does not speak when he ought, shall not be heard when he desires to speak:" Morrish *v.* Murrey, 13 M. & W. 52; Broom's Legal

[McMicken v. Commonwealth.]

Maxims 131, (360), and cases there cited. The counsel in the case for the defendants did not plead for McMicken; and they went on and tried the issues joined by the others after this entry of judgment against McMicken. Such a judgment, if it were necessary, might be regarded as a judgment by confession, for to sustain the proceedings *omnia præsumuntur rite esse acta:* Barde v. Wilson, 3 Yeates 149. Though it would have been more formal and regular to have entered a general or interlocutory judgment, and then for the jury to have assessed the damages as well against him as the other defendants, the irregularity was not fatal. On the principles we have already stated so much of the judgment as was entered for the penalty, and damages can now be reversed by this court and the general judgment for want of appearance affirmed.

This judgment against the sheriff, McMicken, disposes of the eighth and tenth assignments of error; for it established conclusively his liability to the plaintiffs, and dispensed with any evidence of request before suit, which would otherwise have been necessary according to the express terms of the condition of the recognisance. It was held in Wolverton v. The Commonwealth, 7 S. & R. 278, that a surety can avail himself of no defence at law, which would not be equally good for the principal: Farmers' Bank of Reading v. Boyer, 16 S. &. R. 48; McCaraher v. The Commonwealth, 5 W. & S. 21; Commonwealth v. Reitzel, 9 W. & S. 109. It was decided therefore in Masser v. Strickland, 17 S. & R. 354, that a judgment against a constable for official misconduct is conclusive against his sureties as to his liability; which was again affirmed in Evans v. The Commonwealth, 8 Watts 398, and in Garber v. The Commonwealth, 7 Barr 265, was applied to the sureties in an administration-bond, as against whom in like manner, the decree of the Orphans' Court against their principal was held to be conclusive.

Nor can we sustain the fourth, fifth and sixth assignments of error. These rest on the assumption that the scire facias and declaration were defective in not alleging a demand or request of the sheriff before suit brought on the recognisance, or that the sheriff did not pay the amount collected on the execution to the plaintiffs. These are defects which were cured by the verdict. It is the case of a title defectively stated, not of a defective title: Sedam v. Shaffer, 5 W. & S. 535; Thompson v. Musser, 1 Dall. 462. Therefore it has been expressly ruled that laying a past consideration in assumpsit without any previous request, though it would be bad on demurrer, is sufficient after verdict: Stoever v. Stoever, 9 S. & R. 434. The court will presume that everything was done at the trial which was necessary to support the action, unless the contrary appears on the record: Carson v. Hood's Exec'rs, 4 Dall. 108; Miltenberger v. Schlegel, 7 Barr 241. Indeed whenever the defect in the declaration is such as would have

been amended by the court before whom the trial was had, it is cured by the verdict: Corson *v.* Hunt, 2 Harris 510; Robinson *v.* English, 10 Casey 324.

This brings us to the consideration of the seventh assignment of error, which presents the last and perhaps the most important question in this cause. The defendants offered to prove by the testimony of the recorder of deeds, at the time the recognisance purported to have been entered into, "that the defendants never acknowledged or entered into the recognisance recorded in Deed Book Y. Y. p. 334, from recorder's office, being the record of which the plaintiffs have given in evidence a certified copy, and that he was the recorder at that time, and before whom the recognisance purports to have been acknowledged and taken." This was objected to and rejected by the court and an exception sealed. It will be remarked that the offer was not to prove any fraud practised upon the defendants or any false personation of them by other persons, but simply and broadly that the witness had recorded as a recognisance what had never been taken and acknowledged before him.

This evidence was, we think, properly rejected. It was directly to contradict a most solemn record, made by an officer sworn and affirmed to perform the duties of his office with fidelity, and one of whose duties as prescribed by law was to take the acknowledgment and record this very recognisance, a security which involved the most important interests both of the Commonwealth and of private suitors in courts of justice.

It is true that in Brownfield *v.* The Commonwealth, 13 S. & R. 265, it was said by C. J. Gibson that the recognisance given by a sheriff is not a record, and that possibly the plea of *nul tiel record* might be held bad on demurrer; but the case was not decided on that ground exclusively; for it did not appear, as he states, that the issue joined on the plea of *nul tiel record* was tried by the jury, which was the error assigned. He adds: "It (the recognisance) is in this respect like a mortgage, the execution of which, although it has been recorded, is tried on a scire facias, under the plea of *non est factum.*" But this reason is altogether unsatisfactory. A recognisance is altogether unlike a mortgage. It resembles it in nothing, but that the same form of remedy may be used upon both. A mortgage is a private deed, not required to be recorded in order to be valid as between the parties; and a scire facias is the appropriate remedy as well upon an unrecorded as upon a recorded mortgage. On the other hand a sheriff's recognisance falls within the very terms of the definition of a record of that nature, and the recording of it is essential to its existence and validity. "A recognisance," says Sir Wm. Blackstone, "is an obligation of record, which a man enters into before some

[McMicken *v.* Commonwealth.]

court of record, or magistrate duly authorized, with condition to do some particular act:" 2 Blackst. Com. 341.

By the Act of April 15th 1834, Pamph. L. 550, this obligation is required to be taken and acknowledged before the recorder of deeds of the proper county, whose duty it is made to take and record it. He is a magistrate or officer duly authorized for this purpose. By the 74th section of the same act it is made his duty, as soon as the sheriff shall be commissioned, "to certify the recognisance taken by him to the prothonotary of the Court of Common Pleas of the same county, who shall enter the names of the parties thereto upon his docket, in like manner as judgments are by law directed to be entered." It becomes then a part of the roll of a court of record; and although that of itself would not make it a record any more than the filing of a mechanic's claim; Davis *v.* Church, 1 W. & S. 240; yet in connection with the public nature of the instrument it is a very important element in determining its character. It is evident that the plea of *non est factum* is totally inapplicable to such a recognisance. It is no deed; it is not under seal and need not even be signed, although of course it is always proper that it should be, in order to secure the evidence of the identity of the cognisors, which their handwriting affords. It is an oral assent by them to an engagement propounded to them by the officer: "You do acknowledge that you owe," &c. A recognisance for stay of execution is a record which cannot be explained or altered by parol evidence: Withers *v.* Livezey, 1 W. & S. 433. When an act creating a new county provided that in sheriff's sales of land made in the old county, the deeds should be entered in the docket of the Court of Common Pleas of the new county thirty days after acknowledgment, and when the endorsement on the deed and docket entry showed that it had been so entered within the time, it was decided that the prothonotary was incompetent to prove that the entry on the docket had not been made until after the expiration of the thirty days, as it would be contradicting a record by parol: Graham *v.* Smith, 1 Casey 323. And see Musser *v.* Hyde, 2 W. & S. 318. We hold then that a sheriff's recognisance, duly entered in the office of the recorder of deeds, is a record which cannot be contradicted or impeached by parol evidence, other than that which is available against the most solemn judgments and decrees of courts of record, such as fraud or false personation.

The consequences of any other doctrine would be alarming. Sound policy requires that the record of a recognisance by parties who have been approved by the judges of the Court of Common Pleas as sureties, and upon the certificate of which sent, as required by law, to the secretary of the Commonwealth, and filed by him in his office, the commission of the sheriff has been issued, upon the faith of which not only the money of the Commonwealth

*[McMicken v. Commonwealth.]*

but of private citizens has necessarily been allowed to pass into his hands, ought to be of the most conclusive character. To permit it to be impugned in the manner proposed in the defendant's offer would jeopard all these interests, and throw the whole community into doubt and insecurity, if not into peril. No one, compelled to come as party into a court of justice, and whose property must therefore come into the possession of the sheriff, could have any assurance of safety. A door would be open to fraud by collusion with the recorder of deeds. No stronger reason exists for permitting parol evidence in this case than for allowing a prothonotary to testify that a judgment appearing on the record, and on the faith of which titles have vested in third persons or money has been advanced, was never entered. Thus it has been held in one of our sister states that it is incompetent to show by the testimony of the clerk of the court, that the final record was made up by an unsworn deputy and embraced a judgment not entered on the minutes: Shirley *v.* Feame, 33 Miss. 654. In Hinckley *v.* Bridgman, 46 Maine 453, there is a very strong intimation of an opinion that the certificate by the deputy collector of the enrolment of a vessel under the Acts of Congress is conclusive as to the facts therein recited; and in our own case of The Commonwealth *v.* Kendig, 2 Barr 448, it was decided that the official bond of a justice of the peace cannot be avoided by showing that it was executed on a Sunday. The highest considerations of public policy require that the officer himself, to whom the law has intrusted the performance of a public duty, and of the fulfilment of which a record has been made, should not be permitted to open his mouth to impeach it, and thus to admit himself guilty of official misconduct or of crime. It is certainly a much stronger case than that of the party to negotiable paper actually negotiated, who is an incompetent witness to impeach it in the courts of this state: Gest *v.* Espy, 2 Watts 265; Hawkins *v.* Cree, 1 Wright 494. On the same principle of policy it has been settled that the testimony of jurors is inadmissible to prove their own misconduct or that of their fellows in the jury-box, by a decision of the Supreme Court of Pennsylvania, which has been followed and sustained by an overwhelming weight of authority in our sister states, Lessee of Cluggage *v.* Swan, 4 Binn. 150, U. S. Dig., *New Trial*, and this, too, merely on a motion or rule for a new trial. After a verdict is rendered and the jury have separated, the affidavit of a juror that he did not voluntarily consent to the verdict cannot be received to impeach it: Cook *v.* Sypher, 5 Clark (Iowa) 484; Boetge *v.* Lander, 22 Texas 105; McCombs *v.* Chandler, 5 Harring. 423; Mercer *v.* The State, 17 Geo. 497. These cases are all put on the ground of policy, and especially the danger there would be that jurors would be tampered with if such evidence

[McMicken v. Commonwealth.]

were allowed. The same reason exists in the case before us, and with much greater force. From the year 1803 to the year 1834, the validity of all the acts of the sheriff depended on his having entered into a recognisance, for the 5th section of the Act of 1803 provided, "that until sureties shall be given in manner aforesaid, all commissions granted to, and all acts and things whatsoever done by any such sheriff or coroner, under color of office, shall be void and of none effect." This section is supplied and repealed by the Act of 1834; but is it conceivable that during that period every sheriff's deed, every inquest of partition, and every judgment and execution, as well in causes civil as criminal, could have been imperilled by parol evidence, showing that the recognisance duly recorded had never in fact been entered into, and that by the very officer whose duty it was to take and record it? We are of the opinion that sound policy forbids such a doctrine.

It is no answer to say that a man may thus be ruined by the act of the recorder without his knowledge and consent. So may he be by fraud, embezzlement, forgery and perjury, as well as by the unfaithfulness of the officers of courts of justice, as clerks and attorneys. Society can punish crime, but cannot always prevent it, or the ruin it may bring upon innocent persons. The recorder could no doubt be indicted and punished under the 15th section of the Act of March 31st 1860, Pamph. L. 388, entitled "An Act to consolidate, revise and amend the penal laws of this Commonwealth," and he would be liable civilly to the full extent of the injury to individuals caused by such misconduct, and his sureties to the extent of the penalty in his official bond. If these are not sufficient remedies to meet the case, it lies with the legislature to amend the law, which might perhaps be done by requiring all recognisances and official bonds to be made and entered into before the Court of Common Pleas in open court, and recorded there upon its minutes as well as in the office of the recorder of deeds.

> Judgment reversed, and now judgment is entered in favor of the plaintiffs below, William Rawle and George Cadwalader, for the sum of four thousand four hundred and ninety-two dollars ($4492), with interest from November 27th 1867, with costs of suit below, and that the record be remitted for execution to the Court of Common Pleas of Lycoming county.