## Burton *v.* Erie County, Appellant.

*Prisons—Sheriff—Board of prisoners—Counties—Erie county—Municipalities.*

The sheriff of Erie county is bound to receive and board prisoners committed to the county jail by the mayor and alderman of the city of Erie for violation of city ordinances, and the county is bound to pay the sheriff for the board of the prisoners so committed.

The mayor and alderman of a city have power to commit to the county jail persons guilty of violating city ordinances.

Argued April 27, 1903. Appeal, No. 86, Jan. T., 1903, by defendant, from judgment of C. P. Erie Co., Feb. T., 1903, No. 37, on verdict for plaintiff in case of S. S. Burton, Sheriff, v. Erie County. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Issue to determine liability for board of prisoners. Before WALLING, P. J.

The opinion of the Supreme Court states the case.

The trial court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,593.38. Defendant appealed.

*A. E. Sisson,* with him *George E. Gibson,* for appellant.

*E. L. Whittelsey,* for appellee, was not heard.

OPINION BY MR. JUSTICE DEAN, July 9, 1903:

The plaintiff claimed from the county of Erie $1,593.38 for boarding prisoners in the county jail; the county auditors passed and allowed his claim resulting in this balance at their settlement of the sheriff's accounts for the year 1901. There is no dispute as to the amount of the claim. The county, however, denied that it was answerable to the officer for the bill; on filing of the audit it appealed to the court of common pleas where an issue was framed between the parties to determine whether the county was answerable.

At the trial of the issue the county denied that it was in

law bound to pay the sheriff for the board of prisoners committed to jail by the mayor and alderman of the city of Erie in default of payment of fines for violation of city ordinances. The court below was of opinion that the county was legally bound to pay and instructed the jury to render a verdict for the balance claimed as heretofore noted. It is proper to say here, that the entire balance is made up of fines and commitment fees for violation of city ordinances. After judgment on the verdict the county brings this appeal to this court under the act of 1901.

The only question involved at the trial in the court below was: " Is the county of Erie liable for the boarding of prisoners committed by the mayor and aldermen of the city of Erie for the nonpayment of fines imposed for the violation of city ordinances ? "

And that is the only question here ; for while there are six assignments of error, they are all disposed of by the answer to that one question.

The duty of the sheriff to keep the jail and board the prisoners committed thereto has been fixed by statute since before the Revolution, as well as compensation therefor, which last was to be paid by the county. The act of February 24, 1770, enacts, " that all persons committed for any criminal offense whatsoever shall during their imprisonment have and receive three pence per diem each," and it further directed, that the commissioners for each county should pay the same to the sheriff, for the diet and support of such criminals out of the county funds. While several acts have since been passed for fixing the per diem allowance of the sheriff for each prisoner in jail, and special acts for the appointment in some counties of jailers or wardens of the jail to have direct personal supervision of the prisoners when in the jail, the official responsibility of the sheriff for the board and safe-keeping of the prisoners has not been interfered with. The sheriff then, in Erie county, was bound to receive on proper commitment all prisoners delivered to him ; he was then bound by law to safely keep and board them until they were lawfully discharged either by expiration of term or by order of the proper court. Who shall pay, not for prisoners committed for any particular offense, or crime, but for prisoners kept in prison and boarded by the

sheriff? His conduct is not voluntary; he is bound to receive and board them; while the act uses the words, "committed for any criminal offense whatsover," it is manifest these words were used to designate prisoners committed for any offense punishable by fine and imprisonment to distinguish them from persons imprisoned on capias for debt; which class, up to the act of 1842, abolishing imprisonment for debt, probably numbered as many as the other; for these a different provision was made. If the commitment be in form and made out by a properly authorized officer whether a judge of a court of record, coroner, mayor, alderman or justice of the peace, the sheriff must obey it; he is not clothed with the functions of a court of errors and appeals; he cannot sit at the jail door and determine as on a certiorari, that the proceedings were irregular, or as on an appeal, that the commitment was unjust to the prisoner; his single duty is to receive and safely keep.

It may be assumed that, if no provision for payment of the boarding of prisoners had been made, the sheriff would have been bound to board them at his own expense; the presumption would be, that he accepted his office cum onere; but the statutes from that of 1790 down to that of 1856 and the special act of 1866, this last relating to Erie and five other counties, do make provision for the boarding of prisoners and that the court of quarter sessions shall fix the rate. No distinction is made as to the locality or nature of the offense; those in custody are simply termed "prisoners." Nowhere in the statutes can we find any authority in the county auditors or in the courts to make any distinction between prisoners committed for a violation of the general laws of the commonwealth and those committed for violations of borough or city ordinances. In fact there is no distinction in substance; the one, although operative within certain municipal territorial limits is as much against the "peace and dignity" of the commonwealth, as any offense committed outside those limits. A borough or city has a concentrated and dense population whose health, comfort and safety demand special laws operative within municipal boundaries. Trespasses on each other's rights, and acts detrimental to the rights of all are more easily committed there than in sparsely settled regions; therefore, the commonwealth delegated to these subordinate divisions of her territory the power to make

laws for their government not inconsistent with the constitution and laws of the commonwealth. Although the authority is a delegated one it is just as high as the constitution or general assembly, for in them it has its source. When this authority is exercised within the limits of the constitution and laws it is promotive not only of the well being of the municipality but of the interests of all the people of the commonwealth. No one would think that a township supervisor, although his jurisdiction extends only to the boundaries of his township, could neglect his duty without injury to the general public. So all the people of the state to a greater or less degree are interested in the good government of the city of Erie by ordinances which promote travel on its streets, peace in its public assemblies, and health within its borders. There are no subdivisions of the state in which the entire people of the state have not an interest. And so we think violaters of the municipal laws of the city are as much the prisoners of the commonwealth and county as those who commit offenses outside of it.

Had the mayor and aldermen of the city power to commit to the county jail persons guilty of violating city ordinances? We think the act of May 23, 1889, confers this power. The act authorizes the enactment of ordinances, the imposition of fines and penalties for their violation and commitment to the county jail. It is suggested by counsel for appellant, that the legislature was without authority to thus appropriate the county jail to the use of a city. The county being only a subdivision of the commonwealth created for convenience in government, the legislature had full authority over the public property within it, unless that authority is restricted or withheld by the constitution. There is no constitutional inhibition that we are aware of, therefore, there was no legislative transgression of authority in directing commitment to the county jail. The scope of legislative power over counties is so fully discussed in Phila. v. Fox, 64 Pa. 169, by Justice SHARSWOOD that any repetition here is unnecessary.

As to the suggestion that the use of the county jail by the city ought to be the subject of contract between the county and city, we do not care to discuss that question because it has no bearing on this issue. The legislature had the power to direct the use of the jail by the city and exercised that power;

we cannot determine whether in so doing it acted wisely.  Perhaps such an appeal to the legislature would be favorably considered.

We decide, only, that the sheriff was bound to receive and board prisoners committed to the jail by the mayor and aldermen of the city of Erie for violation of city ordinances, and that the county is bound to pay the sheriff for the board of the prisoners so committed.

All the assignments of error are overruled and the judgment is affirmed.