## Keating, Appellant, *v.* White et al.

496

Argued April 16, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Carroll Caruthers,* with him *Andrew G. Uncapher,* for appellant.

*Rabe F. Marsh, Jr.,* with him *Rabe F. Marsh, Scott Fink* and *George H. McWherter,* for appellees.

Opinion by Rhodes, J., October 2, 1940:

This is a case stated. The sheriff of Westmoreland County, as plaintiff, agreed with the commissioners, controller, and treasurer of the county, as defendants, to state a case raising the question of the liability of the county for the premiums payable to the Continental Casualty Company as surety on the official bond and recognizance of plaintiff. The facts as agreed upon in the case stated may be summarized as follows: Plaintiff was the sheriff of Westmoreland County, duly elected and qualified, and served in such office from the first Monday of January, 1936. Before he could be commissioned he was obliged to enter into a recognizance and become bound in a bond, each in the sum of $60,000. On both the recognizance and bond the Continental Casualty Company became surety, and charged a premium therefor in the sum of $1,110 for each, or a total of $2,220. On or about February 6, 1936, plaintiff presented to the county commissioners and to the county controller a statement of the amount of the premium due the Continental Casualty Company on the recognizance, and on or about February 15, 1936, the plaintiff called at the office of the controller, and made a demand for a warrant for payment of the premium due to the Continental Casualty Company on the said recognizance. Both the county commissioners and the controller refused to

make payment to the Continental Casualty Company for the premium due on the recognizance, the controller having refused to countersign any warrant for the payment thereof, and the commissioners having refused to issue such warrant. The county treasurer informed plaintiff that he would not honor for payment any warrant drawn on the county treasurer for payment of the said premium. The premium upon the bond, likewise in the sum of $1,110, was paid through defendants, and demand was thereafter made upon plaintiff to reimburse Westmoreland County in the sum of $1,110 which had been paid by the county for the premium upon the said bond. Plaintiff, however, refused to reimburse the county.

The court below determined that the county was not liable for either premium, and therefore made a decree giving judgment for defendants as if plaintiff had asked for and had been refused a peremptory writ of mandamus for the payment of the premium on the recognizance, and as if he had been surcharged for the amount of the premium on the bond paid by the county through the defendants. Plaintiff, the sheriff of Westmoreland County, has appealed.

It appears that the question—whether the premiums on the sheriff's bond and recognizance were proper expenditures of the funds of Westmoreland County—arose in an attempt to interpret the provisions of section 54 of the Act of May 2, 1929, P. L. 1278, No. 447, otherwise known as "The General County Law," as amended by the Act of May 23, 1933, P. L. 946, No. 182, § 1, 16 PS § 54. That section we have inserted in the margin.[1]

---

[1]"The sureties to be furnished on the bonds of all county officers, and of all deputies, clerks, and assistants required by this or any other act of Assembly to give bond to the county, shall be one or more surety companies, authorized to do business in the Commonwealth of Pennsylvania and which have been approved by the Insurance Commissioner of the Commonwealth, the premi-

The court below reached the conclusion that the entire language of section 54, 16 PS § 54, with the exception of the final sentence, was limited by the words of the first sentence to bonds required to be given to the county. The sheriff's recognizance and bond, however, are, by the terms of sections 182 and 183 of the Act of May 2, 1929, P. L. 1278, 16 PS §§ 182, 183, to be executed to the Commonwealth.

From these provisions the court below reasoned that the bond and recognizance fall outside the liability for premiums imposed by the language of section 54, 16 PS §54, upon the county, and within the exemption declared by the final sentence of that section. It seems clear that if the entire language of the section is for this reason inapplicable to the sheriff's bond, the legislature provided very incomplete and inadequate protection for the interests of citizens which, from time to time, are committed to the keeping of this office. Under this construction of the section, no approval of plaintiff's bond as sheriff was necessary by the court of common pleas or any one else. Nor would any approval appear to have been necessary for the recognizance, although the language of section 182, 16 PS §182, required it to be executed "with at least two sufficient sureties." This result is arrived at in the face of other provisions

ums for which bonds shall be paid out of the county treasury,— and, in counties of the sixth, seventh and eighth classes, also individual sureties. All bonds shall be approved by the court of common pleas. In counties of the sixth, seventh and eighth classes, where individual surety is offered for approval, no one person may qualify for more than one-fourth of the total amount of the bond required; such persons who shall be offered as sureties shall qualify in an aggregate over and above their individual liabilities to an amount equal to three times the amount stipulated in the bond. Each of said bonds shall be conditioned for the faithful discharge by such officer, his deputies and appointees, of all trusts confided in him, and of all duties required of him by law, for the faithful accounting and payment according to law of all money received by him, and shall be taken in the name of the proper

of section 54, 16 PS §54, which, as to counties of the sixth, seventh, and eighth classes, permit individual sureties upon the bonds of all county officers, limiting their capacity to qualify to one-fourth the amount of the bond and one-third of their individual net worth, thus implicitly requiring of the court of common pleas a fairly detailed and extensive examination of the actual protection afforded by bonds of only a fraction of the size of the bond and recognizance of appellant as sheriff of a county of the third class. Again, in the light of the lower court's decision, while section 212 of "The General County Law" of 1929, 16 PS §212, requires the sheriff's recognizance to be transmitted to the Secretary of the Commonwealth, unless the language of section 54, 16 PS §54, provides a repository for his bond, this security indispensable to his qualification for office need be delivered into the custody of no person at all, and need never leave his own possession. Not least among these difficulties is the suggestion that if it is only by personal preference that the sheriff may offer corporate security, and this appellant's security was approved only by the court of common pleas, without power to that end, there is considerable doubt

---

county, and shall be for the use of the county and of the Commonwealth, and for the use of such other party or parties for whom he shall collect or receive money, as the interest of each shall appear in case of a breach of the conditions thereof. The custody of each of said bonds shall belong to the county controller, except the bond of the county controller, the custody of which shall belong to the county commissioners. In counties where the office of controller has not been established, the custody of all bonds shall belong to the county commissioners, except the bond of the commissioners and their chief clerk, the custody of which shall belong to the prothonotary. A copy of any of said bonds, certified by the county controller or the chief clerk to the county commissioners, or by the prothonotary, as the case may be, shall be competent evidence thereof in any judicial proceeding. Nothing herein contained shall affect the bonds required by law to be given by any county officer to the Commonwealth."

whether he qualified for office at all, although it is agreed in the case stated that he was duly elected and qualified, and acted as such after the first Monday of January, 1936, in accordance with the provisions of the act of assembly.

The peril with which the public interest would be threatened by such construction of the statute does not recommend it, and any construction possible under accepted tenets of interpretation which will avoid these consequences is to be preferred. This is true notwithstanding such well-recognized principles as that any expenditure of public funds not expressly authorized by statute is improper, and that if no such authority can be found justifying the expenditure in connection with public office, the office is presumed to have been accepted cum onere. See *Burton v. Erie County,* 206 Pa. 570, 56 A. 40; *Albright v. County of Bedford,* 106 Pa. 582; *Brown v. Commonwealth,* 2 Rawle 40; *County of Cumberland v. Directors of the Poor,* 7 Pa. Superior Ct. 614.

In our opinion the expenditure from public funds of the sums here in question can and should be sustained. It is an accepted tenet of statutory construction that the history of an enactment may always be considered. *Tarlo's Estate,* 315 Pa. 321, 172 A. 139. Section 54 of the Act of 1929, as amended, 16 PS §54, was taken from section 2 of the Act of April 28, 1915, P. L. 198, No. 109, and extended to all counties and to include deputies. The Act of 1915 applied only to counties having 800,000 and less than 1,500,000 inhabitants, and was repealed by section 1051 of the Act of May 2, 1929, P. L. 1278, 16 PS §1051, except as to counties of the first class. (Being inapplicable to first-class counties it would seem to be wholly repealed. See section 31 of the Act of May 2, 1929, P. L. 1278, 16 PS §31.) The Act of 1915 required corporate surety of the sheriff and provided that the premium for such

bond be paid out of the county treasury, and the proviso therein had no application to the official bond of the treasurer but specifically referred only to an extraneous bond which he was required to furnish the Commonwealth under section 34 of the Act of April 15, 1834, P. L. 537, 16 PS §1457. (This section was repealed, except as to first-class counties, by section 1051 of the Act of May 2, 1929, P. L. 1278, 16 PS §1051.) It is reasonable to conclude that in embodying the previous legislation, bearing upon the conduct of county government, in a general code, the legislature did not abandon the intent of the earlier law, and, having made a change in the language of the last sentence of this section of the Act of 1915 necessitated by the drafting of a single provision covering the several county officers who also give bonds to the Commonwealth, used the words "to the county" in the first sentence of section 54, 16 PS §54, only in contradistinction. In short, the last sentence of the latter section refers to the bonds of the county treasurer, register of wills, and other county officers, who in certain matters act as agents for the Commonwealth, and are under liability to the Commonwealth apart from their duties to the county, while the other language of the section refers to the official qualifying bonds of the incumbents of the various county offices. That this is the acceptable interpretation of the words "to the county" in the first sentence of the section is further demonstrated by an examination of the enactment generally with reference to the authority to whom the bonds of the various officers are to be executed. Of the thirteen offices enumerated in section 51 of the Act of 1929, as amended by the Act of June 9, 1931, P. L. 401, §1, 16 PS §51, the holders of nine must post bond, but as to only one, the controller, in section 133 of the Act of 1929, 16 PS §133, are the words "give bond to the county" used. Were the literal construction adopted that only the

controller falls within the entire language of section 54, 16 PS §54, the bond of every other officer of the county would be relieved of the necessity of approval as to its sureties, and the place or person with whom such bonds should be deposited would be left entirely to conjecture.

Section 2 of the Act of 1929, as amended by the Act of June 9, 1931, P. L. 401, §1, 16 PS §2, also provides: "This act does not include any provisions, and shall not be construed to repeal any acts relating to: ...... (i) Collections by county officers of moneys for the Commonwealth, and the issuance of State licenses."

We can arrive at no other conclusion than that it was not the official bond of the sheriff which is referred to in the final sentence of section 54, 16 PS §54.

Reference may properly be made to the antecedents of sections 182 and 183 of the Act of May 2, 1929, P. L. 1278, 16 PS §§182, 183. Section 182 was taken from sections 62 and 64 of the Act of April 15, 1834, P. L. 537 (16 PS §§1531, 1532) and sections 1 and 2 of the Act of April 3, 1860, P. L. 650 (16 PS §§1534, 1535); and section 183 is from section 65 of the Act of April 15, 1834, P. L. 537, 16 PS §1533. The form of the sheriff's recognizance, and the form of his bond are also found in section 3 of the Act of March 28, 1803, P. L. 497, 4 Sm. L. 45. Section 69 of the Act of 1834, 16 PS §1592 (repealed except as to counties of the first class by "The General County Law" of 1929, 16 PS §1051), provided: "Before any such bond or recognizance shall be taken by the recorder of deeds, the sufficiency of the sureties therein named shall be submitted to and approved of by the judges of the court of common pleas of the proper county, or by any two of them, for that purpose convened, who shall certify their approbation of such sureties to the recorder; and no commission shall afterwards be granted until the governor shall have also approved of the sufficiency of such sureties."

The legislature, in embodying the earlier law in a

comprehensive code, manifestly did not intend to dispense entirely with so important a requirement, but to secure its effect by a substituted provision, here section 54 of the Act of 1929, as amended, 16 PS §54. Any other construction would leave meaningless the words "sufficient sureties" in section 182 of the Act of 1929, 16 PS §182, and it is an accepted principle in matters of statutory construction that no word of a statute is to be left meaningless unless no other construction is possible. *Commonwealth ex rel. Meinzer v. Smith,* 118 Pa. Superior Ct. 250, 180 A. 179; *Easby's Petition,* 124 Pa. Superior Ct. 578, 189 A. 548, affirmed 326 Pa. 511, 192 A. 646.

It is also a well-established principle that a determination of the true meaning of a statute requires a broad view of the act and a comparison of the doubtful words with the context of the law. *New York Life Insurance Co. v. Guaranty Corporation,* 321 Pa. 359, 184 A. 31. In the Guaranty Corporation case the Supreme Court (at pp. 362-3) referred to Endlich on the Interpretation of Statutes, p. 35, §27, as follows: "The literal construction then, has in general, but a prima facie preference. To arrive at the real meaning, it is always necessary to take a broad general view of the act, so as to get an exact conception of its aim, scope and object. ...... The true meaning is to be found, not merely from the words of the act, but from the cause and necessity of its being made, from a comparison of its several parts and from extraneous circumstances; or by an examination of, and comparison of the doubtful words with, the context of the law, considering its reason and spirit, and the inducing cause of its enactment."

It is true that the recognizance and bond required of the sheriff by sections 182 and 183 of the Act of 1929, 16 PS §§182, 183, respectively, name as obligee the Commonwealth. We also note that one of the conditions of each of these obligations is that he will "well

and truly pay or cause to be paid to the several suitors and parties interested in the execution of such writs and process ...... all and every sum and sums of money to them respectively belonging ......" As a matter of original construction of these documents, it would now be impossible to hold other than that the promises are intended for the benefit of such "suitors and parties interested" to a degree entitling them to the right of suit thereon. See *Commonwealth v. Great American Indemnity Co.,* 312 Pa. 183, 167 A. 793. This result follows regardless of whether previously an independent construction of these obligations would have permitted recovery in the name of such use plaintiff under the holding of this court in *H. H. Robertson Co. v. Globe Indemnity Co.,* 77 Pa. Superior Ct. 422.

But, in fact, since the earliest times our courts have permitted recovery on the bond and recognizance of sheriffs in the name of the Commonwealth to the use of the individual suffering a loss. *Wolverton et al. v. Commonwealth,* 7 Serg. & R. 273; *Shannon et al. v. Commonwealth,* 8 Serg. & R. 444; *Commonwealth, to use, v. Davis et al.,* 122 Pa. Superior Ct. 280, 186 A. 382. It is therefore evident that these are not obligations in which the Commonwealth is solely interested or predominantly interested.

Both on principles of statutory construction and on the character of these obligations as declared by our appellate courts and evidenced by more than a century of practice, the construction is unmistakable that the bond and recognizance in question are not "to the Commonwealth" in the sense in which that phrase is used in the final sentence of section 54 of the Act of 1929, as amended, 16 PS §54, and that they are not affected by that language.

The question may remain by what authority the recognizance can be held to come within the provision

of section 54, 16 PS §54, requiring corporate surety.[2]
The sheriff's recognizance is a security or obligation en-
tirely distinct from the bond. *Commonwealth, to use, v.
Davies et al.,* supra; *McMicken et al. v. Commonwealth,*
58 Pa. 213; *Morris' Estate,* 4 Pa. 162. But both are to
secure the faithful performance and execution of his
official duties; and both contain the same provision.

It is not necessary for us, in determining the issues
here involved, to decide whether section 54 of the Act
of 1929, as amended, 16 PS §54, made corporate surety
mandatory for appellant's bond. At least, he could
obtain corporate surety, and the county would be liable
for the payment of the premium. We find nothing in
the law, old or new, relating to the nature of the sure-
ties required for appellant's recognizance other than
the various enactments to which we have herein re-
ferred. But it may be observed, however, that if the
corporate surety was not authorized for the recogni-
zance, appellant never qualified for his office; and if
section 54 of the Act of 1929, as amended, 16 PS §54,
did not provide for the approval by the court of com-
mon pleas of the sureties on the recognizance they must
stand without approval by any authority. If appellant
was put to the necessity of finding individual sureties
as the only type acceptable for his recognizance, he was
left obligated to the favor or gratuity of friends or prey
to the whim and avarice of strangers. We cannot pre-
sume that the legislature intended to subject the incum-
bent of a public office of such responsibility to the in-
fluence of any of such motives. The legislative intent,
as evidenced from the successive enactments on the sub-
ject, we think, is to the contrary. In our judgment these
considerations are sufficiently persuasive to justify the
conclusion that section 54 of the Act of 1929, as
amended, 16 PS §54, covered alike the character and

---

[2] The Act of June 15, 1939, P. L. 359, 16 PS §214.1 et seq.,
recognizes that corporate surety was theretofore acceptable.

liability for cost of the surety on both the bond and the recognizance of appellant.

The method utilized to prepare "The General County Law" of 1929, as it applied to the matters with which we are here concerned, clearly appears when reference is made to the prior acts to which we have referred, and from which the statute in this particular was largely made up by adopting parts of such acts without regard to their relationship to each other. Confusion naturally has followed.[3] By the Act of June 15, 1939, P. L. 359, 16 PS §214.1 et seq., the legislature has clarified and modified the law relating to the recognizance and official bonds of sheriffs.

Assignment of error is sustained.

Decree and judgment are reversed, and judgment is

---

[3] The salary of the sheriff of Westmoreland County, a county of the third class, has been fixed at $6,000 per annum by the Act of July 10, 1901, P. L. 641, 16 PS §2291. If the sheriff is required to pay the premiums for corporate surety on his recognizance and bond in the sum of $2,220, the effect would be to take from his salary this amount.

A sheriff in a county of the sixth class receives an annual salary of $4,000, and the act provides that he shall give bond in the manner and in the sum provided by law, and that the premium on such bond shall be paid by the county from the county treasury. Act of May 11, 1925, P. L. 559, §1, as amended by the Act of March 24, 1927, P. L. 68, No. 46, §1, 16 PS §2461. These acts were not repealed by "The General County Law" of 1929, 16 PS §1051. There appears to be no similar specific provision relative to the sheriff in a county of any other class. In *Mertz v. County Commissioners*, C. P. Lycoming County, No. 75, March Term, 1936 (April 21, 1936), it was held that the sheriff of Lycoming County, a county of the sixth class, was not required to pay for the premiums on his recognizance and bond, but that such charges were payable out of the county funds. The Act of May 2, 1929, P. L. 1278, §184, as amended by the Act of June 9, 1931, P. L. 401, §1, 16 PS §184, provided that the recognizance and the bond of a sheriff of a county of the third class be taken in the sum of $60,000, and of a sheriff of a county of the sixth class in the sum of $25,000.

entered in favor of plaintiff and against defendants, as though a peremptory writ of mandamus had been issued and served, for the payment of the premium of appellant's recognizance from the funds of Westmoreland County in the amount of $1,110. Westmoreland County to pay the costs.