BOARD OF EDUCATION OF THE BOROUGH OF LAWNSIDE, A MUNICIPAL CORPORATION, RESPONDENT, v. HADDON FARMS, A NEW JERSEY CORPORATION, JOHN C. REMINGTON, JR., J. EDGAR HOWARD, HOWLAND W. BOTTOMLEY, HARRY C. CHEW, WILLIAM A. GOFF AND CAMDEN SAFE DEPOSIT AND TRUST COMPANY AND WINFRED DeWITT VOSBURY, JR., EXECUTORS OF THE ESTATE OF W. DeWITT VOSBURY, DECEASED, AND A. B. ROE, APPELLANTS.

Argued February 4, 1942—Decided April 23, 1942.

For Haddon Farms, Inc., John C. Remington, Jr., J. Edgar Howard, Howland W. Bottomley, William A. Goff, *Walter Carson.*

For A. B. Roe, *Boyle & Archer* (*F. Morse Archer, Jr.*)..

For Camden Trust Company, Winfred DeWitt Vosbury, Jr., executors, &c., *Frank S. Norcross.*

For the respondent, *Homan, Buchanan & Smith* (*Ewald J. J. Smith*).

The opinion of the court was delivered by

BODINE, J.    In 1925 and 1926, legislation was proposed to terminate the corporate existence of the township of Centre in the County of Camden.    Bills were introduced in the legislature in 1926, to incorporate as separate boroughs, communities known as Mount Ephriam, Bellmawr, Runnemede and Lawnside.    Two other bills provided for the annexation of the remainder of the township, part to the Borough of Haddonfield and the remainder to the Borough of Barrington.

The present action was a suit on a written contract, wherein the Haddon Farms Company and certain of its individual stockholders, promised to assume and pay the principal and interest of certain outstanding serial bonds of the Board of Education of the Township of Centre.    A motion to strike the complaint was denied after the case came to trial.    A motion to nonsuit or direct a verdict for the defendants was denied and judgment was entered for the plaintiff.

Haddonfield is a well improved residential district.    The corporate defendants, or its affiliates, owned land which they sought to develop.    Lots in the Borough of Haddonfield would be easy to sell at a good price, since the borough enjoys the reputation of being a desirable place to live.    The Borough of Lawnside would not attract the same number of persons desirous of preparing a new home.    The Haddon Farms corporation would benefit from the proposed legislation and

Lawnside would be left with a larger burden of debt. The citizens of Lawnside protested to the legislature, and the officers of the corporation and a committee of the Borough of Lawnside met at the State House and reached an agreement to the effect that if the committee would withdraw its protests and the legislation was enacted, the corporation would assume and pay $36,500 of the school bonds mentioned. The protests were withdrawn and the legislation was passed and became the law. The agreement was signed and later reduced to a more complete form under circumstances not necessary to consider. Thereafter the Haddon Farms corporation paid $11,000 for principal and $5,494.30 for interest upon the contract.

The agreement of March 1st, 1927, the elaboration of the earlier agreement executed by the Haddon Farms Company, and its principal stockholders, recites that the inducement therefor was the withdrawal of protests by the borough of Lawnside against the legislation in question.

The case falls clearly within the rule of *Smith* v. *Applegate*, 23 *N. J. L.* 352. In that case, the payee of a note given to induce the withdrawal of opposition to proceedings for the laying out of a public road could not recover thereon because his action was against the public interest. Chief Justice Green said: "It may be that the transaction, as between the parties, was fair, and that no fraud was meditated or actually committed. It may be that the makers of the note have received a full equivalent for the price which they assumed to pay. It may be that the owner of the land would receive, by the payment of the note, no more than a fair equivalent for the land taken for the road. But courts cannot lend their aid nor the sanction of the law to enforce a contract in contravention of sound policy and subversive of the interests of the public."

In the present case, the public was largely interested in the proposed legislation. The Lawnside residents ought not to have withdrawn their protest. It may be too late to undo the wrong which was done in not insisting upon a due observation of the public interest. Contracts of this sort designed to influence legislation for a price are not to be viewed with

favor and courts will not enforce them, even though the beneficiary of the action taken, is the one who breaches the agreement made. See *Kean* v. *Elizabeth*, 35 *N. J. L.* 351; *Montclair Military Academy* v. *North Jersey Street Railway Co.*, 70 *Id.* 229; *Arotzky* v. *Kropnitzky*, 98 *Id.* 344; *Polkowitz* v. *Ewing*, 115 *Id.* 93.

Citizens are under a duty to freely approach the legislature. This right is fundamental in a democracy. Inducing them to desist by reason of promises, carried to a logical conclusion, would be subversive of good government.

The doctrine of estoppel cannot be invoked to make valid that which was void because against public policy.

The judgment is reversed, but without costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 14.