## Obradovich Liquor License Case.

Argued September 28, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Roslyn M. Litman,* with her *S. David Litman,* and *Litman & Litman,* for appellant.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, and *Harold R. Bair,* Special Deputy Attorney General, for Liquor Control Board, appellee.

*Charles E. Hawkins,* with him *Abe R. Cohen* and *Crone & Cohen,* for protestants, appellees.

OPINION BY WRIGHT, J., January 17, 1956:

Louis Obradovich filed with the Pennsylvania Liquor Control Board an application for the transfer to him, at No. 401 Hastings Street in the City of Pittsburgh, of the restaurant-liquor license issued to August J. and Mabel E. Anderson for premises at No. 136 South 21st Street in said City. The application was protested by persons residing in the vicinity of the premises to which the license was to be transferred. The Board refused the application, whereupon Obradovich appealed to the County Court of Allegheny County. After hearing de novo, the trial judge dismissed the appeal and sustained the order of the Board refusing the transfer. Exceptions were overruled by the court en banc, and this appeal followed.

The lower court found that appellant was a reputable person, and that his establishment met the legal physical requirements. It further found that, while the premises in question is zoned commercial, the neighborhood is in fact "almost completely residential"; that, with the exception of a drugstore, the business places already located in the area close by eight o'clock p.m.; and that the proposed establishment would seriously threaten the present quiet character of the neighborhood. The record discloses that the building in which it is planned to house the proposed license is located on the southeast corner of Hastings and Reynolds Streets, fronting on Hastings Street which is entirely residential; that the existing business establishments all front on Reynolds Street commencing at the southwest corner of Hastings and Reynolds Streets and extending one block in a westerly direction away from the proposed licensed premises. In the words of Judge

KAUFMAN, "Not only is the business area, taken collectively, a small island in a residential expanse, but the proposed licensed premises is practically an island by itself". The lower court also emphasized the fact that the premises in question must be continuously passed by children attending school and visiting Mellon Park.

We deem it unnecessary to discuss appellant's contention that the Board does not have administrative discretion in transfer cases. This contention has already been decided adversely to appellant's position in *Rizzo Liquor License Case,* 174 Pa. Superior Ct. 143, 100 A. 2d 135. Appellant further contends that, since the premises in question have been zoned commercial, there was an abuse of discretion in refusing to approve the transfer on the ground that the area is residential in character. It is a sufficient answer to this contention to note that "A municipality may not in the guise of a zoning ordinance regulate the business of dispensing liquor": *Hilovsky Liquor License Case,* 379 Pa. 118, 108 A. 2d 705. Appellant relies upon *Burrell Liquor License Case,* 172 Pa. Superior Ct. 346, 94 A. 2d 110, but that decision is not controlling in the present factual situation. We agree with the court below that the Board did not abuse its discretion in refusing to approve the transfer here under consideration.

The order of the lower court is affirmed.

---

DISSENTING OPINION BY ROSS, J. :

In my opinion, the order in this case should be reversed on the ground that the Board abused its discretion in refusing the transfer.

The *sole* reason advanced for refusing the transfer was that the establishment proposed to be licensed is situated in a "residential" area. That is just contrary

to fact. The municipal authorities by legislative enactment, a zoning ordinance, designated this area as *commercial*. Of course as stated in the majority opinion, a municipality may not in the guise of a zoning ordinance regulate the business of dispensing liquor, but the converse should also be true: the Liquor Control Board—or a court acting under the liquor laws—cannot rezone a municipality and then use that attempted rezoning as the basis for refusing or granting the issuance of a license or a transfer thereof.

I would reverse the order of the court below and remit the record to the Liquor Control Board with direction to approve the transfer of the license in question.

GUNTHER, J. joins in this dissent.

———

DISSENTING OPINION BY ERVIN, J.:

This is an appeal from the order of the lower court affirming the order of the Liquor Control Board refusing the transfer of a restaurant liquor license.

Both the board and the court found that the applicant was a reputable person and that the establishment proposed to be licensed meets all of the physical requirements prescribed by law.

It was also found as a fact that the restaurant was located in a district zoned commercial by the City of Pittsburgh. The lower court, in its opinion, however, stated that this small business district was a small island in a residential expanse.

The testimony reveals that there are seven or eight other commercial places in the vicinity including a cleaning establishment, a beer distributor, a grocery market, a drug store, a furniture upholstery shop and a printing establishment.

The single question presented is whether the Liquor Control Board or the court had discretion to refuse the transfer of this restaurant liquor license under the circumstances here involved. The board, in its opinion, stated: "As provided by the law the Board is given discretion in the consideration of application for transfer of restaurant liquor licenses from one place to another. The Board is of the opinion that, under all of the evidence, protests by the residents of the community, who strongly oppose the transfer of a liquor license to this residential section of the City of Pittsburgh, should be sustained and that, in the exercise of the discretion provided by law this application and transfer of a restaurant liquor license should be refused."

The lower court and the majority of this Court were of the opinion that the case was controlled by *Rizzo Liquor License Case,* 174 Pa. Superior Ct. 143, 147, 100 A. 2d 135, and *Redican Liquor License Case,* 177 Pa. Superior Ct. 511, 110 A. 2d 829. These cases are clearly distinguishable from the present case.

In the *Rizzo* case the board originally refused a transfer because the premises proposed to be licensed were within 300 feet of a school. The applicant then filed a new application but before doing so he had moved a partition a few feet, thereby reducing the size of the room but increasing the distance of the room from the school to slightly more than 300 feet. Judge HIRT said: "It may be noted however that this case on the merits discloses a proper field for the exercise of administrative discretion. The building housing the proposed licensed premises in its outer aspects remained the same in its relation to the school as when the first proceeding was brought. And the argument is specious which insists that the Board must be deprived of discretion by the moving of a partition in

the room, which a license is sought to be transferred, so that by a matter of inches the premises may come to be more than 300 feet from the school. And the provision of §404, quoted in the margin, in our view does not negative discretionary authority in the Board to consider the distance of the premises from the school in this case, viz.: but 3 inches over the statutory line as one of the elements which with others, called for a refusal of the transfer."

In the *Redican* case the board properly exercised its discretion and allowed a transfer notwithstanding the fact that the premises proposed to be licensed were within 300 feet of a church.

While it is true Judge HIRT in the *Rizzo* case did say: "We need not speculate as to the reasons which prompted the Legislature to make an original grant mandatory and the transfer of a license discretionary with the Board.", he did not, however, address himself to the question of whether such delegation of authority would be unconstitutional. He did say that "The question here is of first impression. . . ." (Footnote 2, page 148)

Nowhere in the *Rizzo* opinion is any reference made to the important question of whether §468 of the "Liquor Code" contains any "definite standards and guiding limits" to control the action of the board. This fatal omission may have been dictated by necessity as an examination of §468 will reveal that it does not contain any such standards or limits and therefore it should have been condemned as an unconstitutional delegation of legislative authority.

The failure to consider this question in the *Rizzo* case could be excused only because of the fact that the place proposed to be licensed was really considered to be within 300 feet of a school and the moving of the inner wall was considered as a mere subterfuge. So

considered the facts would bring the case within §404 of the "Liquor Code," which does contain a proper delegation of power to the board in that the board *"may, in its discretion, issue or refuse a license"* if the standards and limitations contained in that section—"if such place proposed to be licensed is within three hundred feet of any church . . . ."—are found by the board to exist.

The majority opinion very conveniently by-passes this question by saying "We deem it unnecessary to discuss appellant's contention that the Board does not have administrative discretion in transfer cases. This contention has already been decided adversely to appellant's position in Rizzo Liquor License Case, 174 Pa. Superior Ct. 143, 100 A. 2d 135."

The fact is that our Court has never considered or disposed of the constitutional question as applied to §468 and it will be the purpose of this dissenting opinion to so consider it.

The question of whether the board has a discretionary power to grant or refuse the application for a transfer under the conditions here presented has been the subject of conflicting judicial decisions in the lower courts. It is decided in one line of cases that no such discretion exists with respect to the transfer of restaurant licenses except where the proposed location is within 300 feet of a church, hospital, charitable institution, school or public playground or is a place where the principal business is the sale of liquid fuels and oil.[1]

---

[1] *Larkin's License,* 35 D. & C. 684 (Phila., 1939) ; *Popp's License,* 41 D. & C. 500 (Erie, 1941) ; *Appeal of Gentile et al.,* 43 D. & C. 53 (Fayette, 1941) ; *Yarosz's License,* 47 D. & C. 404 (1943) ; *Kalanosky's License,* 48 D. & C. 449 (Luzerne, 1943) ; *Appeal of Polish Falcons, etc.,* 51 D. & C. 14 (Allegheny, 1944) ; *Pressman's Appeal,* 53 D. & C. 507 (Phila., 1945) ; *Barabas' Appeal,* 54 D. & C.

It is held in another line of cases that the board does have discretion to grant or withhold the transfer of a license under the circumstances above referred to.[2]

The pertinent sections of the act are as follows:

"Upon receipt of the application, the proper fees and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, *the board shall,* in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club *may, in its discretion,* issue or refuse a license: Provided, however, That in the case of any new license or

---

94 (Cambria, 1945) ; *Lacivita's Appeal,* 54 D. & C. 264 (1945) ; *In re Koch Liquor License,* 37 Del. Co. 303 (1950) ; *Appeal of Moxie Club,* 50 Lack. Jur. 249 (1949) ; *Yurkovic's License Appeal,* 50 Lanc. Rev. 507 (1947) ; *Appeal of Singer,* 3 Lebanon 154 (1952) ; *Appeal of Vercoski,* 39 Luz. L. Reg. Rep. 75 (1946) ; *Appeal of Gaughan's Liquor License,* 39 Luz. L. Reg. Rep. 97 (1946) ; *Leon's Appeal,* 90 P.L.J. 453 (Allegheny, 1942) ; *Application of Jean Sentenac for Transfer of Restaurant Liquor License,* 14 Som. 353 (1950) ; *Bruner's Appeal,* 1 Sept. S. 1942, Q.S. of Somerset Co. (not reported).

[2] *Brodsky's License,* 44 D. & C. 227 (Phila., 1942) ; *In re Transfer of Liquor License,* 46 D. & C. 93 (Phila., 1943) ; *Loftus' Appeal,* 50 D. & C. 422 (Bucks, 1944) ; *Elmen's License,* 51 D. & C. 477 (Crawford, 1944) ; *Shenberger's License,* 54 D. & C. 301 (York, 1945).

the transfer of any license to a new location *the board may, in its discretion,* grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil. . . ." (Emphasis added) 1951, April 12, P. L. 90, art. IV, §404, 47 PS §4-404.

"(a) Licenses issued under this article may not be assigned. The board, upon payment of the transfer filing fee and the execution of a new bond, is hereby authorized to transfer any license issued by it under the provisions of this article from one person to another or from one place to another, or both, within the same municipality, as the board may determine . . . but no transfer shall be made to a person who would not have been eligible to receive the license originally nor for the transaction of business at a place for which the license could not lawfully have been issued originally. . . ." 1951, April 12, P. L. 90, art. IV, §468, as amended 1953, Aug. 24, P. L. 1340, §1, 47 PS §4-468.

It is argued that the board is given discretion by the words *"as the board may determine"* (emphasis added), in §468 above referred to. We do not agree with this conclusion. By using the word "determine" we think the legislature merely intended to give to the board the power to determine whether the applicant was fit, whether the premises complied with all the statutory and board requirements and whether the applicant was the only person pecuniarily interested. After the board determined those facts, then we believe that the language required the board to issue the license. An examination of §404 will reveal that the legislature knew what language to use when it wished to confer a discretion upon the board to either issue or

withhold a license. That language is as follows: "Provided, however, That in the case of any new license or the transfer of any license to a new location *the board may, in its discretion, grant or refuse* such new license or transfer if such place proposed to be licensed is within three hundred feet of any church. . . ." (Emphasis added) If the legislature, by the language used in §468, had, in all cases of transfer, given a discretion to either grant or refuse the application for transfer even though the applicant had complied with all the requirements, then the language used in §404 was unnecessary. If all the provisions of the "Liquor Code" are to be given effect, no conclusion may be reached except that the board's discretion is limited to the situations enumerated in §404. If the court were to decide otherwise, then the language in §404 giving the board discretion in transfers if the place proposed to be licensed is within 300 feet of the enumerated institutions, or if the proposed place has, as its principal business, the sale of liquid fuels and oil, must be regarded as mere surplusage. Such a construction is not permissible. *Com. v. Mack Bros. Motor Car Co.,* 359 Pa. 636, 59 A. 2d 923; *Keating v. White,* 141 Pa. Superior Ct. 495, 15 A. 2d 396; *Com. v. Stingel,* 156 Pa. Superior Ct. 359, 40 A. 2d 140. For this reason we believe that the legislature intended only that the board should have discretion in the situations described in §404, to wit: when the license was to be a new one or the transfer of an old one to a place within 300 feet of a church, etc. Is it reasonable to say that although there is no discretion in the granting of the original license, when this same license comes up for a transfer a new and entirely different theory of liquor control will be applied? Under such an interpretation, the same person could be an applicant and demand a liquor license under the mandatory provisions of the act, and then

when he desired to effect a transfer of the same license, the board could say, in effect, now we have a different issue. In our opinion such a change of theories of license granting is not reasonable and is not necessary. Such a course could be placed upon the court only by the clearest and most unequivocal language. When there is a confusion in the Acts, is it not more reasonable to say that, since the original license is mandatory, then the transfer is mandatory? Any other conclusion would lead to absurd and anomalous consequences.

Discretionary power having been granted and limited to the situations mentioned in §404, the doctrine of *expressio unius est exclusio alterius,* in effect, withholds such discretionary power as to other situations.

Professor Benjamin N. Schoenfeld, in his article, "Administrative Discretion of the Pennsylvania Liquor Control Board in the Issuance of Licenses," 28 Temp. L.Q. 161 (1954), at page 169, says: "The authority of the Board to approve the transfer of a license is no greater than its authority to approve the original issuance of a license."

If the act be construed as conferring on the board or the court a broad discretionary power to grant or refuse a transfer of liquor license in accordance with its concept of the public interest, the effect would be to render the act unconstitutional. It is a basic constitutional principle that the legislature is powerless to delegate its legislative functions to an administrative board without providing a definite criterion for the guidance of the board.

In *Bell Telephone Co. of Pa. v. Driscoll et al.,* 343 Pa. 109, 113, 114 (1941), 21 A. 2d 912, the Supreme Court well pointed out: "The constitution of this Commonwealth, in Article II, §1, provides: 'The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and

a House of Representatives.' In Boro of W. Phila., 5 W. & S. 281, 283, we said: 'Under a well-balanced constitution, the legislature can no more delegate its proper function than can the judiciary.' The limits upon the power to delegate authority are set forth in the leading case of Locke's Appeal, 72 Pa. 491, 498: 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. . . .' Where the legislature establishes primary standards and then delegates to an administrative body the power to determine some fact or state of things upon which it makes or intends to make its own action depend, it is the legislature which has legislated and not the administrative body." Under the "Liquor Code" here under consideration, except with respect to the fitness of the applicant, or the proximity of the proposed establishment to a church, hospital, charitable institution, school, or public playground, or to a place where liquid fuels and oil are sold, no standards are explicitly set up to guide the board as to when it should grant and when it should refuse a proposed license transfer. Nor is the situation helped by treating the act as providing by implication that the board shall not authorize a transfer whenever it finds it inimical to the public interest to do so. In *Bell Telephone Co. of Pa. v. Driscoll et al.,* supra, the Court said on this subject (p. 116) : "Even if we were to consider that public interest can be implied as the standard for approval, that term would not be a proper standard unless further defined or limited in its meaning. To hold otherwise would be to reject the rule that the legislature may not delegate its authority to legislate since in any such delegation there is an implication

that the power will be exercised in the public interest. Before any commission can decide whether a contract is contrary to public interest, it is necessary to find what is or what is not in the public interest. The power to make such determination rests with the legislature and without such declaration the commission would be without a standard or criterion. The phrase 'public interest' as used in this connection is 'a concept without ascertainable criterion.' At best the term is too vague and elastic to furnish a standard. As we have said: 'In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed. . . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: Schechter Poultry Corp. v. United States, 295 U. S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72': Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260, 263, 200 A. 672." See also *Hotel Casey Co. v. Ross et al.,* 343 Pa. 573, 23 A. 2d 737.

Our own Court has recognized this principle in numerous cases, some of which are: *Com. v. Gardner,* 96 Pa. Superior Ct. 450, allocatur refused by Supreme Ct. 297 Pa. 498, 147 A. 527; *Kellerman v. City of Phila.,* 139 Pa. Superior Ct. 569, 13 A. 2d 84; *Marchines v. Pa. Unemployment Comp. Bd. of Review,* 148 Pa. Superior Ct. 1, 24 A. 2d 691; *Com. v. Reitz,* 156 Pa. Superior Ct. 122, 39 A. 2d 522; *Weinstein Liquor License Case,* 159 Pa. Superior Ct. 437, 48 A. 2d 1; *Com. v. Franklin,* 172 Pa. Superior Ct. 152, 92 A. 2d 272.

If it were to be assumed that the legislature intended its interpretation of the Act as set out in §104

of the "Liquor Code," namely, that the Act shall be deemed "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth. . . .", to be a standard upon which the Pennsylvania Liquor Control Board might base its discretion, such a standard would, nevertheless, be insufficient, and the statute would still be violative of the Constitution. In *Holgate Bros. Co. v. Bashore,* 331 Pa. 255, 200 A. 672, the title of the law there involved stated a similar purpose but the Court held the statute unconstitutional. If the act were considered as conferring discretionary powers on the board in the transfer of restaurant liquor licenses, except in situations expressly provided for, then in our opinion it would be an unconstitutional delegation of power without proper standards being provided by the legislature.

The Statutory Construction Act of 1937, May 28, P. L. 1019, art. IV, §52, 46 PS §552, declares: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

". . .

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth; . . . ."

It is our view that if the Liquor Control Board is to be given discretion in a matter of this kind, it will be necessary for the legislature to amend the law and very carefully define the limitations within which the board may exercise such discretion. It could, for example, give the board the discretion to issue or refuse an original license or the transfer of a license in a community which the board found to be predominantly residential.

For the reasons hereinabove set forth I would reverse the decree of the court below.