## J. C. Grille, Inc. Liquor License Case.

458

Argued March 27, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Michael H. Egnal*, with him *Don F. D'Agui* and *Herbert Brener*, for appellants.

*Russell C. Wismer*, Special Deputy Attorney General, with him *Horace A. Segelbaum*, Deputy Attorney

General, and *Herbert B. Cohen,* Attorney General, for Pennsylvania Liquor Control Board.

*Irwin S. Lasky,* for protestants.

OPINION BY WRIGHT, J., July 17, 1956:

On September 13, 1954, J. C. Grille, Incorporated, filed with the Pennsylvania Liquor Control Board an application for the transfer to it, at 1450 Greenwood Street in the City of Philadelphia, of the restaurant liquor license issued to Capobianco for premises at 1233-35 Buttonwood Street in said city. At the hearing, on November 23, 1954, the application was protested by persons residing in the vicinity of the premises to which the license was to be transferred. On December 9, 1954, the Board refused the application, whereupon J. C. Grille, Incorporated, appealed to the Court of Quarter Sessions. After hearing de novo on March 25, 1955, the trial judge, on August 17, 1955, dismissed the appeal and sustained the order of the Board refusing the transfer. This appeal to the Superior Court followed.

At the hearing before the Board's examiner, the investigating officer testified that the "reasons listed in the refusal letter are: a restricted institution within 300 feet; a restriction in the deed and individual protests". The testimony established that 1450 Greenwood Street is within 300 feet of the Temple University stadium and tennis courts. While the refusal to approve the transfer might have been based upon this circumstance alone, *Haase Liquor License Case,* 175 Pa. Superior Ct. 618, 106 A. 2d 865, no reference was made to it, either by the Board or by the court below. The opinion of the Board sets forth that "the evidence adduced established the following facts:

"1. There is a restriction prohibiting the use of the property for the sale of alcoholic or spirituous liquors for consumption on the premises.

"2. Remonstrances have been filed by and on behalf of residents of the community in opposition to the proposed transfer of a restaurant liquor license to this location.

"The Board is of the opinion that under all of the evidence, a license cannot be granted for these premises by reason of the restriction prohibiting the use thereof for the sale of alcoholic or spirituous liquors for consumption therein, and that this application for transfer of a restaurant liquor license must, therefore, be refused".

The record discloses that, on August 28, 1943, title to the tract, of which the premises in question are a part, was conveyed to Thomas F. Kelly, Thomas J. Kelly, and Edward E. Kelly, co-partners trading as Thomas Kelly and Sons, Builders. Sometime prior to February 19, 1946, the Kellys sought to change the zoning classification of the tract from D-Residential to A-Commercial. This change was opposed by residents of the adjoining lands. After negotiations between the Kellys and these residents, the Kellys executed an instrument under seal dated February 19, 1946, and duly acknowledged, which reads in pertinent part as follows:

"And Whereas it is the intent and purpose of the said Owners to impose upon the above described premises certain Building Restrictions for the proper improvement and protection of the general neighborhood, and to provide proper and sufficient Commercial Area for the Service, Comfort and Convenience of said neighborhood, the said Owners do and hereby declare that for a period of twenty years from the date hereof no

Building shall be erected or occupied on the above described premises for the sale of Alcoholic or Spirituous Liquors for consumption on the premises; nor for a Gasoline Station; And further provided that no building occupied for the Sale of Fruit, Produce, Meats or other kindred Merchandise shall comprise an Area exceeding Three Thousand (3000) square feet on the First or Street Floor thereof, And the said Owners do hereby for this purpose intend that this Agreement shall be entered of record".

By ordinance of City Council approved June 28, 1946, the tract in question was changed to zoning classification A-Commercial. On June 18, 1947, Thomas F. Kelly, Thomas J. Kelly and Edward E. Kelly, trading as Thomas Kelly and Sons, Builders, conveyed the land to Thomas F. Kelly and Edward E. Kelly, co-partners trading as Thomas J. Kelly Sons, Builders. On September 16, 1949, Thomas F. Kelly and Edward E. Kelly conveyed the property to the Vernon Development Company, a corporation of which the entire stock was then owned by Thomas F. Kelly and Edward E. Kelly. Thomas F. Kelly died on August 10, 1953. At the time of the hearings Edward E. Kelly was an officer, and held a majority of the stock, of the Vernon Development Company. None of the deeds made any reference to the restriction recited above. However, on the margin of the record of the deed to the Vernon Development Company in the Office of the Recorder of Deeds appears a notation of the restriction, and that it was recorded in Deed Book M.L.S. 177, page 547, on August 13, 1952.

At the hearing before the lower court, the testimony taken at the Board hearing was made a part of the record, and some additional testimony was taken. In his opinion the hearing judge states: "There is a two-

fold issue before us: One, the legal effect of a declaration recorded in the recorder of deeds office; two, the effect of the opposition of the protestants". After discussing the first question only, the hearing judge ends his opinion as follows: "We conclude there was no abuse by the Board of its power in its refusal to grant the license because of the restriction on these premises".

A covenant in a deed prohibiting use of the real estate conveyed for the manufacture or sale of intoxicating liquors is reasonable and legal: *Cheris's Liquor License Case,* 127 Pa. Superior Ct. 355, 193 A. 162. And where such a restriction exists, the Board may lawfully refuse to issue a restaurant liquor license: *McGettigan's Liquor License Case,* 131 Pa. Superior Ct. 280, 200 A. 213. However, appellant contends that the instant "ex-parte declaration" is not binding upon the owner's successors in title since it was not accompanied by a transfer of interest in the land. In this connection he relies upon sections 531, 534, and 543 of the Restatement of the Law of Property.

One answer to appellant's first contention is that the case at bar does not involve true successors in title, since the identity of ownership remained the same. Edward E. Kelly, who was one of the original parties, holds the majority of the stock of the corporation which has title to the premises. Looking through the corporate fiction, we perceive that Edward E. Kelly is still the real owner. Assuming, arguendo, however, that successors in title are involved, our study leads us to the conclusions (1) that the covenant in question does run with the land; (2) that it is valid and enforceable even if it does not.

In *McCloskey v. Kirk,* 243 Pa. 319, 90 A. 73, it was said: "The manner in which restrictions limiting the

use of land is (sic) created may be by reservation in the deed, by a condition annexed to a grant, by a covenant, or even by parol agreement of the grantees." In *DeSanno v. Earle,* 273 Pa. 265, 117 A. 200, Mr. Justice FRAZER stated: "The test in determining whether a particular covenant runs with the land is the intention of the parties and to ascertain such intent resort may be had to the words of the covenant read in the light of the surroundings of the parties and the subject of the grant". Applying these principles to the agreement in the present case, we find a valid restriction binding on the successors in title. The intent is plainly set forth in the agreement "to impose upon the above described premises certain Building Restrictions for the proper improvement and protection of the general neighborhood ... for a period of twenty years ..." This language must be interpreted in the light of the apparent object or purpose of the parties and of the then existing condition: *Drucker v. Russell,* 279 Pa. 443, 124 A. 92. See also *Baederwood, Inc. v. Moyer,* 370 Pa. 35, 87 A. 2d 246. It is clear that the purpose of the instant agreement was to permit commercial occupancy of the premises under the change in zoning classification, with the limitation that certain commercial occupancies, considered by the parties as objectionable, were banned for twenty years. As was said in *McCloskey v. Kirk,* supra: "Whether it runs with the land or whether it is an easement is immaterial, provided the creation of the restriction is clearly defined and is understood by the parties at the time." The subject is expounded in 26 C.J.S. Deeds, 167, page 546, as follows:

"The right of a person not a party thereto to enforce in equity a restriction on the use of property depends on whether or not the restrictive covenant or

agreement was imposed on the land owned by defendant for the benefit of the land owned by plaintiffs who are seeking to enforce the restriction; if so, equitable relief should be granted to the plaintiffs, if not plaintiff should be denied the equitable relief prayed. The question is largely determined by the intention of the parties, and it must appear from the terms of the grant or from the situation of the parties and the surrounding circumstances that it was the intention of the grantor, when inserting the restriction, to create a servitude or equity in the nature of an easement which would inure to the benefit of complainant's land and equitably be annexed as an appurtenance. A restriction imposed for the benefit of the owner of other property creating an equitable right in the nature of an easement in his behalf may be enforced in equity without regard to whether it is inserted by way of condition, covenant, or otherwise. Complainant's right does not rest on whether or not the restriction runs with the land, nor on privity of estate or contract, but there must be found somewhere the clear intent to establish the restriction for the benefit of the party attempting to restrain its infringement, of which defendant must have either actual or constructive notice . . . Whether a restrictive covenant runs with the land is material in equity only on the question of notice, since, if it runs with the land, the covenant binds the owner regardless of knowledge, and if not, he is bound only if he took the land with notice".

The question of notice does not here arise, since the officers of the Vernon Development Company, being two of the parties to the agreement, had actual notice even though the agreement had not yet been recorded in 1949 when the deed to the corporation was made.

Appellant next contends that the parties beneficiary are not ascertainable since the agreement in question refers only to the "proper improvement and protection of the general neighborhood". It is argued "that this phrase is vague and indefinite and does not clearly show who the beneficiaries are or who is encompassed in the term 'general neighborhood'." Appellant further submits that the persons who seek to enforce the restriction do not have "title to any portion of the land, which is the subject matter of this appeal."

The word "neighborhood" is a relative term: *Rea v. Pittsburgh,* 229 Pa. 106, 78 A. 73. The true test is set forth in *Mariner v. Rohanna,* 371 Pa. 615, 92 A. 2d 219. In that case the restriction was for the benefit "of other adjoining property owners". Citing Section 541 of the Restatement of the Law of Property for the proposition that "The persons initially entitled to enforce the obligation of a promise respecting the use of land are the promisee and such third persons as are also beneficiaries of the promise", Mr. Justice MUSMANNO said: "The benefit of the restriction need not run to the grantor-promisee alone or to the owners of other lots in a plan of lots deeded by him. As in the case of other covenants, third parties may be made the beneficiaries of a restriction and may enjoin its breach *so long as it is clearly shown that the covenant was for their benefit"* (italics supplied).

In the case at bar, it is clear that the protestants are beneficiaries of the agreement since they live close enough to the premises in question to be considered a part of the "general neighborhood". Some live directly across the street, others live within the same block. Two were actually parties to the original negotiations with the Kellys out of which the agreement arose. It is for the benefit of all of them that the occupation

and enjoyment of their respective dwellings be free from the annoyances inherent in the unlimited commercial use of the premises in violation of the agreement. We quote with approval the following excerpt from the opinion of the court below:

"While in the Mariner case, supra, the restriction was in a deed, still, under the ruling of the McCloskey case, supra, the agreement before us constitutes a valid and subsisting restriction since by the wording of the document the parties spelled out their intention that no building would be erected or occupied for the sale of alcoholic or spirituous liquors on the premises for a period of twenty years from its date; further that the persons intended to be benefited were those in the 'general neighborhood'. They set forth their intent to have the agreement entered of record; the instrument was signed by each of the parties with his seal, and acknowledged by each of them. We do not think the phrase, 'general neighborhood' is so indefinite as to nullify the effect of the agreement".

Appellant's final contention is that it is "contrary to public policy for persons to extract from owners of land an ex-parte declaration purporting to impose building restrictions thereon, in consideration of the withdrawal of their opposition to the enactment of a zoning ordinance". It is of course true that the instant agreement was given by the original owners of the premises in consideration of the withdrawal of opposition to the change in zoning classification. However, the cases cited by appellant in this connection[1]

---

[1] *Board of Education of Lawnside v. Haddon Farms*, 25 A. 2d 905 (N.J.) ; *Pingry v. Washburn*, 1 Aikens (Vt.) 264; *Menzel v. Niles Co.*, 86 Colo. 320, 281 P. 364; *Whitaker v. Richmon*, 73 Pa. Superior Ct. 203; *Borden v. Ellis*, 158 Pa. Superior Ct. 259, 44 A. 2d 530; *Kuhn v. Buhl*, 251 Pa. 348, 96 A. 977.

are readily distinguishable from the present situation. Whether a contract is against public policy is a question of law for the court to determine from all the circumstances in each case: *Kuhn v. Buhl,* 251 Pa. 348, 96 A. 977. It was there said: "It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts and agreements, therefore they are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way". The test is the evil tendency of the contract and not its actual injury to the public in a particular instance: *Borden v. Ellis,* 158 Pa. Superior Ct. 259, 44 A. 2d 530. To declare the agreement here involved to be inimical to public policy would be an unwarranted extension of the cases heretofore decided in this Commonwealth. Public policy actually favors the restriction and control of the sale of liquors. In the words of Judge Crumlish of the court below: "Without laboring the issue, it is sufficient to say that restrictions of this nature on the use of land are not considered contrary to public policy. The whole spirit expressed by the agreement is affirmatively beneficial, and in our opinion should not be set aside".

In our view of the case, it is unnecessary to discuss appellee's contention that, in the light of protestants' testimony regarding the character of the neighborhood, the Board did not abuse its discretion. See *Rizzo Liquor License Case,* 174 Pa. Superior Ct. 143, 100 A. 2d 135; *Obradovich Liquor License Case,* 180 Pa. Superior Ct. 383, 119 A. 2d 839. We will simply note that appellant, upon whom the burden lies, *Zermani Liquor License Case,* 173 Pa. Superior Ct. 428, 98 A. 2d 645,

in no way questions the discretion exercised by the Board.

The order of the lower court is affirmed.