Marchines, Appellant, *v.* Pennsylvania Unemployment Compensation Board of Review.

Argued December 11, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*John T. J. Brennan,* with him *Paul A. McGlone,* for appellant.

*Richard H. Wagner,* Asst. Special Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, *R. Carlyle Fee,* Asst. Special Deputy Attorney General and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY BALDRIGE, J., February 28, 1942:

This appeal by John S. Marchines is from the decision of the Unemployment Compensation Board of Review denying him benefits.

The appellant in his claim alleged that he was idle for 168 consecutive hours beginning 2:30 P.M. October 15, 1940, and ending 2:30 P.M. October 22, 1940. The record shows that he was paid for the work he performed on the 15th and 22d of October. The question before us is whether the time which elapsed between appellant's stopping and starting to work constituted a week within the meaning of the Unemployment Compensa-

tion Law, approved December 5, 1936, Second Ex. Session, P. L. (1937) 2897, and amendments, 43 PS 753. The board contends that notwithstanding 168 consecutive hours may be equivalent to 7 days, it does not necessarily follow that *any* 168 consecutive hours constitute a *week* within the meaning of the statute we are considering, and the regulations of the department.

Section 401 of this act, 43 PS 801, provides: "Compensation shall be payable to any employe who is or becomes totally unemployed ...... (b) Has registered for work at a designated employment office, at such times and in such manner as the department may prescribe; (c) Has made a claim for compensation in the proper manner prescribed by the department; ......"

Article I, section 4 (s), 43 PS 753, provides: " 'Total Unemployment' means that an employe during a particular week has had no work for which wages are payable to him." (v) " 'Week' means any calendar week ending at midnight Saturday, or the equivalent thereof, as determined in accordance with general rules adopted by the department."

The Department of Labor and Industry adopted the following regulations:

Regulation No. 7, adopted January 1, 1938, states: "For the purpose of establishing a basis of computation of total unemployment in a given period and in harmony with the definition of 'total unemployment,' as contained in Article I, Section 4, Subsection (s) a 'particular week' of such total unemployment shall be interpreted to mean seven consecutive days beginning from the first day of such total unemployment of any individual, which first day may happen on any day of a calendar week. For the purpose of benefit payments, such first day of such 'particular week' shall be the date of registration, as set forth on the claim for Unemployment Compensation, Form UC-42."

Regulation No. 16, adopted June 1, 1939, reads as follows: "The calendar day next succeeding the date

4

of separation from employment shall be considered the first full day of unemployment under the Pennsylvania Unemployment Compensation Law. Accordingly, while a worker may register for employment whenever he sees fit following his separation from work, the waiting period contemplated under the law cannot commence prior to the calendar day succeeding the date of separation from work and the claimant must be so informed.

Since all Employment Offices open daily at 8:30 A.M., Sundays excepted, this time will be considered the starting point for the waiting period contemplated under the law. When working conditions are such that a worker is separated from his job after midnight but before 8:30 A.M. of a certain day, the waiting period for such worker may start at 8:30 A.M. of the same date."

The department in the above regulations uses the day rather than an hour as the proper unit in measuring a week, and has excluded the day of separation from employment in its computation, except where the employe becomes unemployed between midnight and 8:30 A.M., in which instance the time of unemployment starts at 8:30 A.M. Applying this method the claimant was unemployed not more than 6 calendar days. In fact, as above noted, he was unpaid only 5 days.

The appellant asserts that the wording of the statute prevents the adoption of any regulation by the department which requires an applicant for unemployment compensation to serve a waiting week longer than 168 consecutive hours; that any regulation defining a waiting week to be more than that number of hours is in conflict with the terms of the statute and is invalid. In other words, the department has no authority to determine that the "equivalent" of a calendar week of unemployment may be measured by calendar days rather than hours.

Section 4 (v) states that a week means any calendar week ending with midnight Saturday "or the equivalent thereof, as determined in accordance with general rules

adopted by the department." The legislature undoubtedly meant by that language to give certain authority to the Department of Labor and Industry to adopt reasonable rules, but subject to certain limitations, relating to the method of measuring a week, otherwise it is meaningless. It is made mandatory that a week fixed by the department must be equivalent to a calendar week. In some statutes the week is not contemplated to be a calendar week consisting of 7 days. The same legislature that passed the law we are discussing, at its regular session passed an Act of Assembly approved July 2, 1937, P. L. 2766, regulating the hours of employment, wherein a week is defined as comprising 44 hours. True, that statute, after the enactment of the one we are considering, was declared unconstitutional because it attempted to delegate to the Department of Labor and Industry, in conjunction with the Industrial Board, the power to make regulations over the hours of labor without any regard or restraint of any kind so that the working hours of any day could be shortened or extended: *Holgate Bros. Co. et al. v. Bashore et al.*, 331 Pa. 255, 200 A. 672. No standards were set up there for the department to exercise its discretion.

In *Romig v. Champion Blower & Forge Company*, 315 Pa. 97, 102, 104, 172 A. 293, the Supreme Court held that under the Workmen's Compensation Act of June 2, 1915, P. L. 736, 5½ days are a working week for the purposes of fixing compensation. Congress passed the Fair Labor Standards Act of 1938, June 25, 29 U. S. C. A. 280. Under section 207 a working week for the first year after the law became effective was 44 hours; second year 42 hours; and third year 40 hours. One can readily understand the reason for the statement in this legislation that a "'week' means any calendar week" etc.

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to

determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Locke's Appeal,* 72 Pa. 491, 498. It was held in *Panama Refining Company v. Ryan,* 293 U. S. 388, 426, 55 S. Ct. 241, that Congress may establish primary standards and give others the duty to carry out a declared legislative policy. Here a certain standard was set up to which the department must, and did, adhere in fixing the time that constitutes a week.

It is obvious that the law makers did not intend that an inflexible rule should prevail so that a week would extend only from one Saturday night to another Saturday night, and it did not say so. Otherwise a claimant would not be entitled to unemployment compensation unless seven days had passed after the first midnight Saturday, despite the fact that he might have been unemployed for seven consecutive days, which overlapped two calendar weeks. That was never contemplated.

The method resorted to by the department was practical and in conformity with section 38 of the Statutory Construction Act of May 28, 1937, P. L. 1019, Article III, 46 PS 538, which provides in part as follows: "When any period of time is referred to in any law, such period in all cases, except as otherwise provided in sections thirty-nine and forty, shall be so computed as to exclude the first and include the last day of such period."

The validity of Regulation No. 16 is also challenged on the ground that it arbitrarily discriminates in favor of an employe who ceases employment between midnight and 8:30 A.M. by giving him a credit for the date of separation and that such a distinction is not based upon any reasonable classification. Some inequalities generally result from the adoption of regulations of the character we are considering, but that does not necessarily mean the regulation is fatally defective. The employment offices are not open until 8:30 A.M. so that a claim cannot be filed before that hour. There is no such

unwarranted difference in treatment of claimants as to render the regulation void on the ground of being arbitrary and discriminatory.

Furthermore, the appellant's claim was denied on the ground that he was unemployed 6 calendar days only, when he returned to work, and any alleged inequitable result that might follow a man's ceasing his employment between midnight and 8:30 A.M. does not affect the claimant.

Complaint is also made that the construction given by the board is in conflict with public policy as declared in the preamble of the act, which is to enable persons who have become unemployed to tide themselves over the period of unemployment by receiving funds for that purpose. The benefits of the act are limited to those who are unemployed for a certain period and as this claimant did not bring himself within the provisions of the act we find no merit whatever to this contention.

The ruling of the Board of Review is affirmed and the appeal is dismissed.

RHODES, J. dissents.