## Commonwealth v. Graver

*George Kerestes*, for Commonwealth.

*Martin H. Philip* and *Arnold Sousa*, for defendant.

HEIMBACH, P. J., May 20, 1964.—We learn from the record of Justice of the Peace Harry E. Heydt that an information dated July 12, 1962, sworn to by A. Dean Rockwell, Pennsylvania Game Protector, charged James Edward Graver, the above named defendant, with having, on June 21, 1962, entered upon a State propagation area in Towamensing Township, Carbon County, contrary to section 940 of The Game Law of June 3, 1937, P. L. 1225, 34 PS§ 1311.940. At a hearing

on July 26, 1962, Justice of the Peace Heydt quashed the proceedings on defendant's motion because he had failed to post, as required by section 1202, his available office hours on his outside office door.

We likewise learn from a second record of Justice of the Peace Harry E. Heydt that defendant, James Edward Graver, was, on the information of said A. Dean Rockwell, rearrested on August 11, 1962, for the same violation for which he had been discharged. At a hearing before Justice of the Peace Heydt on September 5, 1962, he was found guilty of being in a posted game propogation area with a fishing rod and fined $50.

The Commonwealth's evidence, as shown in the record, consisted of:

1. The testimony of three witnesses who saw defendant in the propagation area with a fishing rod;

2. Photograph showing a game refuge sign posted on a wire fence of the subject area;

3. A photostatic copy of a State Game Propagation Area agreement between the Bethlehem Municipal Water Authority and the Pennsylvania Game Commission, and a photostatic copy of the area map;

4. A State Game Propagation Area poster (paper);

5. A State Game Propagation Area sign (metal);

6. A letter of Justice of Peace Jeremiah Trump;

7. A certified copy of resolutions adopted by the Pennsylvania Game Commission establishing rules and regulations governing State Game Propagation Areas.

On September 19, 1962, defendant certioraried the proceedings. Subsequently the Commonwealth moved to dismiss the certiorari because defendant failed to act within five days, contrary to section 1210 of The Game Law. We entered an order restricting our review to jurisdictional question: Opinion and order dated November 30, 1962, filed in the Court of Common Pleas, January term, 1963, no. 10.

Defendant filed 10 exceptions in support of his mo-

tion for discharge of defendant, abandoning several at the argument.

Those exceptions not abandoned we will discuss seriatim.

Certiorari, of course, brings up the record and the only thing before the court of common pleas is the regularity of the proceedings as shown by the record: Commonwealth v. Burall, 146 Pa. Superior Ct. 525; 7 P. L. Encyc. 23, §28, and cases cited therein.

### Exception No. 1

"The Act of June 3, 1937, P. L. 1225, art. XII, sec. 1202, as amended, provides that a summary proceeding such as this one should be brought before the nearest available Justice of the Peace. Harry E. Heydt was not the nearest Justice of the Peace."

Section 1202 of The Game Law, as amended, 34 PS §1311.1202, provides, inter alia:

"All summary proceedings under the provisions of this act shall be commenced by affidavit made within two years after the date of any violation before the nearest available magistrate, alderman or justice of the peace in any city, borough, incorporated town or township, in the county. The term 'available magistrate, alderman, or justice of the peace' shall mean a magistrate, alderman or justice of the peace who is in his regular office between the hours of nine o'clock antemeridian and five o'clock postmeridian of the same day, or who is in his office at other specified hours notice of which is at all times posted on the outside of his door. A magistrate shall be deemed to be not available if he is not in his regular office between the hours of nine o'clock antemeridian and five o'clock postmeridian of any day, or if he does not have posted on his door notice of other specified hours during which he will be at his office, or if he is not at his office during those specified hours or if in any particular proceeding he shall state, in writing, that he believes it would

be unduly difficult for him to hear and justly determine the case."

The Commonwealth admits that Justice of the Peace Harry E. Heydt was not the nearest magistrate to the site of the offense, but that a Jeremiah Trump was. We have before us, as part of the record, a letter from Justice of the Peace Jeremiah Trump, dated July 9, 1962, addressed to the prosecutor, stating that he had no regular office hours, due to work and other business commitments; that it would be difficult and nearly impossible to hear and justly determine the case of James Graver; and that this condition will exist for several months and possibly the balance of this year. This letter authorized the prosecutor to bypass Justice of the Peace Trump and to commence prosecution before the next nearest available magistrate to the site of the offense: section 1202, supra.

The information is properly before us, having been returned with the record: Commonwealth v. Hunter, 107 Pa. Superior Ct. 513; and sets forth, inter alia, that Jeremiah Trump, a justice of the peace in Towamensing Township, did not have regular office hours between 9 a.m. and 5 p.m.; that no notice was posted on his door of other specific office hours; and that he, Jeremiah Trump, stated in writing that it would be difficult for him to hear and justly determine the case, and that he, Harry E. Heydt, Penn Forest Township, Carbon County, was the nearest available magistrate.

We hold that these statements in the information, even though not proved nor being a part of the record, there being proof that the offense occurred in Carbon County, raises the presumption that Harry E. Heydt was the nearest available justice of the peace, and defendant has the burden of proving the contrary, a burden which he failed to meet: Commonwealth v. Shetrom, 24 D. & C. 2d 592; Commonwealth v. Costenbader, unreported, but opinion filed in the Court of

Quarter Sessions of the Peace of Carbon County to no. 8, January sessions, 1961; Commonwealth v. Coldsmith, 176 Pa. Superior Ct. 283; Commonwealth v. Davidson, 412 Pa. 279.

What Justice O'Brien in Commonwealth v. Davidson, supra, said at page 280, is apposite:

"The second point raised by the appellant is that the necessary jurisdictional facts were not put on the record. He complains that, at the trial, the Commonwealth did not introduce evidence that the information was lodged before the justice of the peace nearest to the first Turnpike exit from the scene of the alleged violation. In Commonwealth v. Coldsmith, 176 Pa. Superior Ct. 283, 106 A. 2d 649 (1954), the Superior Court held: 'No attempt has been made by appellant to prove that the justice was in the wrong township or that he was not the nearest available magistrate. Where the defendant is brought before a justice of the peace in the same township as the situs of the offense, it is presumed he is the nearest available magistrate, and the defendant has the burden of proving the contrary.'

"Here, the justice of the peace is in the Township where the violation occurred and there is no contention by appellant that he was not the proper magistrate."

The instant case differs from the Davidson and Coldsmith cases and the lower court cases cited only in the respect that the offense occurred in an adjoining township to that in which prosecution was brought. Since the reason for so doing is set forth in the information, and since The Game Law provides for prosecution before the nearest available magistrate . . . in any city, borough, incorporated town or township in the county, the cases cited control.

We are cognizant of the case of Commonwealth v. Pennsylvania Milk Products Corp., 141 Pa. Superior

Ct. 282, and relied on by our colleague, Judge Kenneth Koch, in Commonwealth v. Seidle, 31 D. & C. 2d 158. In the Seidle case, the record being before the court on certiorari, Judge Koch held that a statement in the information that a magistrate, who resided in a township other than that where the offense took place, was the nearest available magistrate was not proof of such fact and unless at the hearing proof was given that he was in fact the nearest available magistrate, the judgment would be dismissed, because the necessary jurisdictional fact did not appear in the record.

We are obliged to disagree with Judge Koch. The Milk Products Corporation case, supra, holds only that on certiorari a recital in the information that an offense took place within the jurisdiction of the magistrate is no proof of that fact, but evidence must be produced to prove such fact, otherwise the jurisdiction of the justice has not been shown. The court said, at 285:

". . . the mere fact that an offense within the territorial jurisdiction of the justice has been charged, is not enough; the record must show proof of that jurisdictional fact. The justice must find the specific facts upon which his jurisdiction depends or that the averments of the complaint are true, and that he has so found them must appear from his record."

We see nothing inconsistent in the cases cited, making it unnecessary to prove that the magistrate is the nearest available magistrate, and the Milk Products case, making it necessary to prove the situs of the offense. The former cases hold that where an offense has been proven to have occurred within the territorial jurisdiction of the magistrate there is a presumption that he is the nearest available magistrate and proof of such need not be given. Where the situs of the offense confers such jurisdiction, there is no such presumption and proof must be forthcoming. . . .

## Exception No. 9

"The Justice of the Peace did not have jurisdiction because the information was defective in that it did not conclude with the words 'against the peace and dignity of the Commonwealth of Pennsylvania' as required by article V, section 23 of the Constitution of Pennsylvania."

We dismiss this exception as being without merit.

Article V, section 23, of the Constitution provides:

"All prosecutions shall be carried on in the name and by the authority of the Commonwealth of Pennsylvania, and conclude 'against the peace and dignity of the same.'"

Carringer, Summary Convictions, page 39, indicates this section applies only to indictments.

In Commonwealth v. Hopkins, 165 Pa. Superior Ct. 561, at page 568, the court says:

"It may well be doubted that this is a mandatory requirement of the Constitution, rather one would think that it is directory."

Likewise, see Commonwealth v. Hessman, 8 D. & C. 2d 625. We are satisfied, and so hold, that such an allegation is unnecessary.

## Exception No. 10

"The defendant was charged with violating section 940 of the Pennsylvania Game Laws by entering a State Game Propagation Area. No evidence was introduced that the commission has *formulated* and *adopted* a rule or regulation under this section prohibiting entry NOR could the commission adopt such a rule or regulation. Section 940 empowers the commission only to adopt such rules for the management and government of such lands for their proper use and administration. There is no authority under section 940 for the commission to adopt rules prohibiting entry, as for example, is provided in section 941 covering State Game Refuges and Auxiliary Game Refuges. As there

is no evidence that the commission formulated and adopted such a rule or regulation prohibiting entry and as the commission could not adopt such a rule or regulation, the Justice of the Peace has no jurisdiction to find a person guilty of violating such a rule or regulation."

We dismiss that part of the exception relative to the Commonwealth's failure to introduce evidence of the adoption of a rule or regulation prohibiting entry (into propagation area). Proof was introduced in the form of a certified copy of resolution adopted by the Pennsylvania Game Commission establishing rules and regulations governing State Game Propagation Areas, as provided in sections 930 and 940 of The Game Law. Said rules or regulations introduced into evidence, inter alia, provide:

"No person, or persons, other than those authorized by the commission, shall enter any state game propagation area, marked and posted as required by law, at any time of the year."

Defendant does not contend that the area was not properly posted.

We likewise dismiss the remaining part of such exception as being without merit.

Section 940 of The Game Law provides:

"Rules and Regulations

"The commission is hereby empowered to formulate, adopt, post and enforce such rules and regulations for the management and government of lands acquired for its use or under its control by lease or agreement, or for refuges, or State Game Farms, or State Game Propagation Areas, or special preserves, as it may deem necessary or advisable for their proper use and administration, or as may be established pursuant to agreement with the Department of Forests and Waters, the Board of Fish Commissioners, or any Federal authority, or with lessors.

"Such rules and regulations shall be the law of this Commonwealth relative to such lands or refuges or game farms or game propagation areas or special preserves, and it is unlawful for any person to violate any of the rules and regulations so adopted by the commission. A violation of any of the provisions of such rules and regulations shall subject the offender to the penalties hereinafter provided; and in addition thereto such person shall pay the penalties hereinafter provided for hunting or trapping, or catching, or killing, or wounding, or driving, or attempting to hunt, trap, catch, kill, wound, or drive, any birds or animals within such refuges, or game farms, or game propagation areas, or special preserves, contrary to the provisions of this article or the rules and regulations adopted by the commission."

The first paragraph of section 941 provides:

"It is unlawful for any person, except by special permission of a duly authorized representative of the commission, or as hereinafter in this section provided, to enter or go upon a State Game Refuge, or an Auxiliary State Game Refuge, during any open season for the hunting of game, or to enter or go upon such a refuge at any time of the year with firearms, or bows and arrows, or traps, or dogs, or to permit a dog or dogs under his control to enter any refuge. *The commission, however, is hereby empowered, by adopting a suitable regulation under provisions contained in section 940 of this act, to prohibit a person or persons from entering or going upon any such refuge, or all such refuges, at any or all times of the year should it deem such action advisable.*" (Italics supplied.)

It follows that the Game Commission properly adopted its rules and regulations as to entry upon a propagation area under section 940 of The Game Law.

Although not discernible from the exception filed, defendant argues that section 940 of The Game Law is

an unlawful delegation of legislative authority to the Game Commission, and violates article II, section 1, of the Constitution of Pennsylvania. Such article provides:

"The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives."

Under section 930 the commission is empowered to declare and set aside any suitable area of land as a State Game Propagation Area.

Under section 941 the commission is specifically authorized by the legislature to adopt a rule or regulation prohibiting a person or persons from entering or going upon any established game refuge.

Pursuant to such expressed authority, the regulation against trespassing on this particular State Game Propagation Area was adopted by the Game Commission. This is a proper exercise of the authority delegated to the Game Commission by the legislature. What Judge Ross said in Weinstein Liquor License Case, 159 Pa. Superior Ct. 437, at 439:

"The question of delegation of legislative power has been before our courts many times, and the rule is well established that the legislature, although it cannot delegate its power to make a law, can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Marchines v. Pennsylvania Unemployment Compensation Board of Review, 148 Pa. Superior Ct. 1, 24 A. 2d 691; Gima v. The Hudson Coal Co., 106 Pa. Superior Ct. 288, 161 A. 903; affirmed in 310 Pa. 480, 165 A. 850; Locke's Appeal, 72 Pa. 491. In Locke's Appeal, Mr. Justice AGNEW stated, 'to assert that a law is less than a law because it is made to depend on a future event or act, is to rob the legislature of the power to act wisely for the public welfare, whenever a law is passed relating to a state of

affairs not yet developed, or to things future, and impossible to be fully known . . . If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is unknown, uncertain and contingent can be the subject of law.' It would appear that the true distinction is between the delegation of power to make a law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made. Chester County Institution District et al. v. Commonwealth et al., 341 Pa. 49, 17 A. 2d 212; Panama Refining Co. v. Ryan, 293 U.S. 388; Union Bridge Co. v. U. S., 204 U.S. 364."

and at 441:

"Statutes in the alternative depending upon the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them are not an improper delegation of legislative power. Chief Justice Black in Moers v. City of Reading, 21 Pa. 188, at page 202, said, 'Half the statutes on our books are in the alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law.' The state may confer discretionary powers upon an administrative board (Commonwealth v. Funk, supra), and uniformly the federal Supreme Court has upheld this power. Davis v. Mass., 167 U. S. 43; Wilson v. Eureka City, 173 U. S. 32; Gundling v. Chicago, 177 U.S. 183; People ex rel. Lieberman v. Van de Carr, 199 U.S. 552," is apposite.

To the cases cited we add Commonwealth v. Cabell, 199 Pa. Superior Ct. 513; Commonwealth v.

Collins, 203 Pa. Superior Ct. 125. Likewise see Commonwealth v. Philip, 13 D. & C. 2d 769, where the court held section 940 of The Game Law was constitutional.

We do not share defendant's contention that section 940 gives law making powers to the commission without restriction. If such were true, the statute would be unconstitutional: Commonwealth v. Reitz, 156 Pa. Superior 122; Holgate Bros. Co. v. Bashore, 331 Pa. 255. We hold the commission only has powers to perfect the details of a legislative scheme and carry out the mandates of the laws as enacted by the legislature. A reading of prior sections of The Game Law leads unalterably to that conclusion. Section 901 provides for the acquisition of . . . propagation areas by the commission. Section 902 provides that the entire control of such lands shall be under the direction of the commission. Section 906 provides that such lands may be used for propagation of game. Section 921 authorizes the commission to establish auxiliary State Game Refuges for the protection and propagation of wild life on all or any portions of privately owned land under an agreement with the owner. Section 930 provides for the commission setting aside any suitable areas for propagation purposes and adopting rules and regulations governing such areas as it deems essential. It likewise provides for the posting and boundary marking of such propagation areas, stating the manner in which such areas shall be marked and posted. Said section likewise makes it unlawful to enter such area contrary to rules and regulations of the commission.

Section 940 restricts the commission to adopting rules and regulations and enforcing such rules and regulations for the management and government of these lands acquired as set forth in the prior sections. The Game Commission does not establish the penalties for the violation thereof. Section 943 provides for penalties.

Judge Ervin in Commonwealth v. Collins, supra, at 130, appropriately quoted a statement in Tate Liquor License Case, 196 Pa. Superior Ct. 193, at 199, which is applicable here:

" 'As our civilization has become more complex, there have been more "things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation." ' "

For the reasons hereinbefore set forth, we enter the following

*Order*

And now, May 20, 1964, the action of the justice of the peace in finding defendant guilty and imposing a fine and costs is hereby sustained and the writ of certiorari discharged. Costs on defendant.